Bernard Tomson, J.
In this action the plaintiff alleges that he was engaged as a broker to sell certain premises and the defendants “ agreed to pay plaintiff a commission upon such sale.” The complaint further alleges that the plaintiff procured a buyer, ready, willing and able to purchase the premises 1 ‘ upon the terms and conditions set forth by defendants,” that the defendants refused to sell the premises and ‘ ‘ refused to pay plaintiff its lawful commission,” all to the plaintiff’s damage in the sum of $1,000. The answer alleges: (1) A general denial; (2) failure to procure a buyer ready, willing and able; (3) failure to procure a buyer who “ reached a meeting of the minds concerning the purchase of the defendants’ premises upon the terms and conditions set forth by the defendants.”
Neither the pleading nor the proof render applicable Express Realty Co. v. Zinn (39 Misc 2d 733). In that case, the complaint alleged in substance that the plaintiffs sought to recover on a “net listing.” Not only is there no such pleading here, but also reference to plaintiff’s Exhibit 3 in evidence would demonstrate clearly that the gross selling price proposed was $21,000, the seller to receive $20,000 and the broker’s commission, therefore, was to be $1,000. This does not fall within the category of a “ net listing ” prohibited by section 175.19 of title 19 of the Official Compilation of Codes, Rules and Regulations promulgated by the Secretary of State (19 NYCRR 175.19) pursuant to section 91 (formerly § 20-a) of the Executive Law. Section 91 reads as follows: “ § 91. Rules. Subject to and in conformity with the provisions of the constitution and laws of the state, the secretary of state may adopt and promulgate such rules which shall regulate and control the exercise of the powers of the department of state and the performance of the duties of officers, agents and other employees thereof.”
It is questionable whether section 91, which gives the Secretary of State power to adopt and promulgate rules to ‘‘ regulate and control the exercise of the powers of the department of state” authorizes the adoption of “regulations affecting brokers and salesmen.” The specific grant of power to adopt such regulations is not found in the Real Property Law (art. 12-A) which inter alia empowers the Department of State *721 to license real estate brokers, prohibits certain actions by them or their salesmen, and provides for hearings on complaints and for the procedure to be followed with respect to “ Violations ” (§ 442-e). Section 91 of the Executive Law apparently permits the adoption of rules and regulations by the Secretary of State to regulate and control the exercise of such powers as are found (with respect to real estate brokers) in article 12-A of the Real Property Law. Section 441-c of the Real Property Law headed “ Revocation and suspension of licenses ” limits the specific grounds for revocation or suspension to a “ material misstatement in the application for such license ”, “fraud or fraudulent practices”, “dishonest or misleading advertising,” or “untrustworthiness or incompetency”.
The “Regulations Affecting Brokers and Salesmen,” (Part 175) in addition to prohibiting “net listing” contracts, interdicts commingling of money, requires disclosure of the broker’s interest and generally governs a broker’s activities. It would appear that, although a violation of the regulations would constitute grounds for action in a revocation of suspension proceeding, it cannot be said that the failure to conform to the regulations would render void or ‘6 illegal ’ ’ a brokerage contract. It is difficult, in addition, to reach the conclusion that section 175.19 ever was intended to prohibit the “listing” in this case. From the inception of the relationship between plaintiff and defendants, there was always disclosure and understanding as to the gross selling price sought by the seller. The use of the word ‘e net, ’ ’ in view of all the circumstances, may have been unfortunate, but clearly it was for the purpose of showing only that the broker was willing to accept a reduced commission.
Section 175.19 therefore did not render the brokerage agreement, if there was one, “illegal.” However, even if it did constitute under proper pleading a valid defense, it is not available unless it was affirmatively pleaded.
Subdivision (b) of section 3018 of the Civil Practice Law and Rules reads: ‘ ‘ Affirmative defenses. A party shall plead all matters which if not pleaded would be likely to take the adverse party by surprise or would raise issues of fact not appearing on the face of a prior pleading such as * * * facts showing illegality either by statute or common law ”. The section is derived from section 242 of the Civil Practice Act. (See Sixth Report to Legislature by Sen. Finance Comm. Relative Revision of Civil Practice Act; N. Y. Legis. Doc., 1962, No. 8; and, see, 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., § 3018.13 et seq.)
*722 Section 242 of the Civil Practice Act required that the defense of illegality be affirmatively pleaded to be available. See, also, Brearton v. De Witt (252 N. Y. 495, 500) where the court said: “ The presumption is that contracts are legal until it appears upon their face or by pleading that they are illegal. The illegality of a contract, unless it does appear upon the face of the complaint, is a defense to be pleaded. (Civ. Prac. Act. § 242; Milbank v. Jones, 127 N. Y. 370; Donnelly v. Bauder, 217 App. Div. 59.) ” (See, also, Dodge v. Richmond, 5 A D 2d 593; Seckendorff v. Halsey, Stuart & Co., 229 App. Div. 318; Schwartz v. Frieder, 249 App. Div. 199.)
A subsidiary question relates to the applicability of section 3018 of the Civil Practice Law and Buies to practice in the District Court. The Nassau County District Court Act was superseded by the Uniform District Court Act (L. 1963, ch. 565, eff. Sept. 1, 1963). The Nassau County District Court Act was repealed by section 1 of chapter 568 of the Laws of 1963, effective September 1, 1963.
Section 95 of the superseded Nassau County District Court Act read: “ The answer must contain * * * 2. A plain and concise statement by any new matter constituting a defense or counterclaim.” The language of section 95 obviously, therefore, required that an affirmative defense of illegality be pleaded. The language of section 95, however, was not carried over into the Uniform District Court Act (cf. § 901 et seq.). There is, however, nothing in the Uniform District Court Act which would obviate the requirement imposed by section 3018 of the Civil Practice Law and Buies that an affirmative defense be pleaded. Any other determination would run contrary to the basic scheme for pleading, as envisaged by the revisors of the Civil Practice Law and Buies. (See “ Commentary,” by Joseph L. Marino to article 30 of the Civil Practice Law and Bules; McKinney’s Cons. Laws of N. Y., Book 7B, CPLB, p. 189, under the heading “ Gr ” “Affirmative Defenses.”) Analogous is the holding in International Supply Corp. v. Lifton (183 Misc. 555) where the Appellate Term, First Department, interpreting subdivision 2 of section 83 of the New York City Municipal Court Code which was identical to section 95 of the Nassau County District Court Act, held that an affirmative defense was required to be pleaded in a reply under the old practice in the Municipal Court, even though the New York City Municipal Court Code did not then require a reply to a counterclaim or an affirmative defense contained in an answer.
Specifically, then, it is here held that section 3018 of the Civil Practice Law and Buies is applicable to practice in the *723 District Court, and requires an affirmative defense to be pleaded.
The claim of illegality having been disposed of, it becomes necessary to determine whether the plaintiff has sustained its burden of proof. Of critical importance here is the proposed date for “ taking title and possession,” stated in plaintiff’s Exhibit 3 in evidence as “on or about April 1, 1963.’’ The defendants’ third child was due to be delivered in May or June. Their contract for the purchase of a new home provided for closing of title on June 15. The court holds that with respect to the closing day as well as other essential matters unnecessary here to disclose, the plaintiff failed to produce a buyer ready, willing and able to perform according to the terms of the brokerage agreement or any modification thereof. The plaintiff failed to sustain its burden of proof.
Judgment for the defendants.