Burke, J.
By agreement dated July 17, 1962, the defendants contracted to sell to one James R. Frazer for $130,000 certain real property located in Hicksville, New York, owned by the defendants. The contract was conditioned upon the ability of the sellers to obtain the abandonment of a street which was indicated on a filed map of the subject premises but which was not in actual existence. Closing of title was to take place “ on or about ” 30 days after notice of the successful completion of the abandonment proceeding. The contract recited the parties’ agreement that Arthur C. Levy, a licensed real estate broker and the plaintiff in this action, “ brought about this sale ” and the seller’s agreement to pay Levy a commission at the rate established or adopted by the Board of Real Estate Brokers in the locality where the property was situated, which in this case was 5%, or $6,500. It did not, however, specify when or under what conditions plaintiff’s commission was payable.
The abandonment proceeding was successful but a subsequent title search revealed certain clouds on defendants’ title to the land in the abandoned street and the prospective purchaser, after being informed of this, stated to the defendants that he desired to cancel the agreement if the defects in title could not be cured within 30 days. In reply the defendants gave the purchaser a choice of maintaining legal proceedings to remove the defects, which proceedings they estimated would take 90 days to complete, or of annulling the contract. Frazer chose the latter course and plaintiff was never paid his hoped for commission.
Plaintiff has now brought the instant action to recover this commission, alleging in his complaint that he “ duly performed all the terms and conditions ” of his brokerage agreement with the defendants and that the defendants “ failed and refused to complete the sale ” of their property to the purchaser procured by plaintiff. Thus far plaintiff has prevailed, having been awarded judgment in the amount sought by the Supreme Court, Nassau County, following a trial without a jury and having had this award affirmed, without opinion, by the Appellate Division, Second Department, but we are of the opinion *274 that the decisions below were erroneous and that reversal and a new trial are required.
The decision of the trial court indicates that the court’s award of judgment in plaintiff’s favor was grounded on its view that upon the signing of the contract of sale between the defendants and Frazer plaintiff had earned his commission. This is the result that would ordinarily obtain where a brokerage agreement makes no mention of terms or conditions affecting the broker’s right to a commission (see Wagner v. Derecktor, 306 N. Y. 386, 390, and the cases cited therein) but the parties to a brokerage agreement are free to add whatever conditions they may wish to their agreement, including a condition that the contract of sale actually be consummated before the broker is deemed to have earned his commission, although an agreement that the broker is not entitled to his commission where the failure of the sale to be completed was due to the seller’s default will be found only where such a result appears to have been clearly intended (id., pp. 390-391). And, while in the instant case the defendants do not claim that they could avoid liability to plaintiff if failure of the sale to be consummated was due to their own fault (as indeed they could not argue on this record), they do claim, and here the record seems clearly to support them, that it was the understanding of the parties that plaintiff’s right to a commission was conditioned upon title being closed.
Defendants’ contract with the plaintiff was oral and its terms, both express and understood, were never subsequently reduced to writing in any kind of formal memorandum, except to the extent that plaintiff’s role in the transaction was acknowledged in the contract of sale. Their agreement that the plaintiff should represent them as broker was expressed by the defendant Lacey in the course of a telephone conversation with the plaintiff, who had phoned Lacey to solicit a listing of the property, with none of the terms of the brokerage agreement discussed during this conversation other than the amount of plaintiff’s commission. Nevertheless, plaintiff himself testified on the trial of this action that it was his understanding that he was to receive his commission on the closing of title. Plaintiff further testified, in explanation of this, that by “ on the closing ” he had reference only to the date on which his commission would be paid but in *275 legal effect such language in a brokerage agreement imports also the notion that closing of title is a condition precedent to the broker’s being entitled to a commission. (Aimes v. Wesnofske, 255 N. Y. 156,161-162.) Whether or not such a meaning ought generally to be given to such language where used, to describe a contract entered into as casually as this one was, there is in this case other, very persuasive evidence, indicating the parties ’ understanding that plaintiff ’s right to a commission was contingent upon title closing, which warrants attributing such significance to plaintiff’s testimony.
This evidence consists of a letter sent to plaintiff by defendants’ attorney in connection with plaintiff’s retention of am attorney to represent the defendants in the abandonment proceeding, a proceeding which was entered into at the instance of Frazer, the prospective purchaser. Initially neither plaintiff nor the defendants had .contemplated the bringing of such a proceeding and when it was originally proposed to defendants they indicated their unwillingness, to be bothered with it but were assured by plaintiff that he would retain a lawyer to handle the matter and that its cost should be deducted from Ms commission. It was in tMs connection, then, that defendants’ attorney, before the contract of sale was ever executed, wrote to plaintiff, stating that it was defendants’ understanding that plaintiff alone was to be personally responsible for this other attorney’s fees and disbursements and that defendants would pay the attorney, out of plaintiff’s commission, only “ if, as and when” the abandonment proceeding was successful and their “ deal [was] actually closed. ” This letter could, conceivably, have referred only to defendants’ potential liability to the attorney retained by plaintiff in the event the abandonment proceeding was unsuccessful, in which event, of course, the “ deal ” would not have closed, but the plaintiff conceded on the trial that he had testified at an examination before trial that he understood this letter as meaning that he, the plaintiff, would be paid a commission only if the sale was consummated. Plaintiff at no time before the trial of this action raised any objection, to this letter, to which he had given this reading, and this circumstance, taken with plaintiff’s own acknowledgment that he was not to be paid a commission until the closing of title, compels, we believe, the conclusion that the parties’ understand *276 ing of this agreement was that plaintiff’s right to a commission was conditioned upon the sale’s actual consummation.
As was pointed out above, however, such an agreement will not absolve the seller of the obligation of paying a commission where the sale fails of completion through the seller’s own fault and, therefore, if, upon the new trial that must be had here, plaintiff can show that it was through defendants’ fault that the contract of sale was never consummated, he must prevail. With respect to the proceedings to be had following remand, though, it must be noted that our decisions discussing when a condition in a brokerage agreement that title actually close will be deemed waived speak of “ fault ” (see, e.g., Colvin v. Post Mtge. & Land Co., 225 N. Y. 510, 516), “ defendant’s own wrong ” (Wagner v. Derecktor, supra, p. 391), “ waiver ” or “ active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition ” (Aimes v. Wesnofske, supra, p. 163), and the vendor’s “ ref us [ing] to perform his obligations under the contract of sale ” (Stern v. Gepo Realty Corp., 289 N. Y. 274, 277). The prospective seller will be held to have waived the condition that title actually close where closing of title was prevented solely by his refusal to remove curable defects or clouds on his title (Stern v. Gepo Realty Corp., supra), but in a case such as this, where the defendants were presented by the prospective purchaser, Frazer, with a seemingly impossible ultimatum under which he expressed the desire to cancel the agreement if the title defects could not be cured within 30 days, a much closer question, going to the reasonableness of defendants’ conduct in not undertaking themselves to cure the title defects, but, rather, of giving Frazer the option of bringing the necessary proceedings himself or of canceling, is presented. Defendants, in order to rely upon the condition in the brokerage agreement that no commission would be payable unless title closed, were not required to bring an action for specific performance against Frazer (see Aimes v. Wesnofske, supra), in which action they very likely would have been successful as time was not of the essence in the sale contract and the title defects were apparently curable within a reasonable time, but perhaps, in good faith, they should have themselves offered to clear the title defects. The reasonableness of their offering Frazer only this limited option between *277 canceling and Ms bringing the necessary proceedings to clear title must be determined by the court on retrial as a question of fact on, the basis of all the circumstances then known to defendants. It may very well be, for example, that the court will conclude that, in the face of Frazer’s ultimatum to defendants, they reasonably believed that they had no other choice, short of litigation with Frazer, but to offer him the opportunity to cancel. In addition, if the defendants on the new trial can persuade the court, as they contended on the first trial, that plaintiff in fact urged them to allow Frazer to cancel the sale agreement, defendants may not be held to have waived the condition that title close.
For the reasons stated above, the order appealed from should be reversed and the matter remitted to the Supreme Court, Nassau County, for a new trial.
Chief Judge Fuld and Judges Scileppi, Bebgan, Keating, Bbeitel and Jasen concur.
Order reversed and a new trial granted, with costs to abide the event.