**Sidney N. WENIGER and General Resources Associates Incorporated, Plaintiffs,**

**v.**

**UNION CENTER PLAZA ASSOCIATES et al., Defendants.**

**No. 71 Civ. 4283 (JMC).**

United States District Court,
S. D. New York.

Dec. 16, 1974.

---

Sage, Gray, Todd & Sims, New York City (William J. Allingham and Robert W. Brundige, Jr., New York City, of counsel), for plaintiffs.

852

Demov, Morris, Levin & Shein, New York City (Irving Bizar and Barbara P. Sugarman-Abrams, New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge:

Plaintiff commenced this action to recover $249,200 in brokerage commissions in the Supreme Court of the State of New York, New York County, in July of 1971. On October 1, 1971, the action was removed to this court by the defendants on grounds of diversity of citizenship. The trial of this cause was had before the Court, sitting without a jury, on April 8, 9 and 10, 1974. At the close of the trial each of the parties moved for judgment. For the reasons indicated below, plaintiff's motions are granted and defendants' motions are denied.

## THE FACTS

Plaintiff Sidney N. Weniger (a citizen of New York) is, and was at all times here relevant, a real estate broker duly licensed by the State of New York.[1] Defendants Sheldon E. Bernstein and Melvin H. Cohn are, and have been at all times here relevant, general partners of the defendant Union Center Plaza Associates, a partnership through which they dealt in the transaction at issue. (None of the defendants is a citizen of or an enterprise having its principal place of business in New York.)

The evidence adduced at trial took one of three forms: (1) the testimony of two witnesses (Plaintiff Weniger and Defendant Cohn); (2) stipulations of the parties; and (3) documentary proof. In this regard, the Court notes at the outset of its discussion that it finds the testimony of Messrs. Weniger and Cohn to be inherently incredible. The Court, having had the opportunity to observe these individuals on the witness stand, is of the view that their respective interests in the outcome of this litigation

caused them, to a somewhat substantial degree, to color their testimony. However, the factual questions presented are not, for that reason, difficult to determine. The contemporaneous documentary entries of the parties clearly indicate their intent and their understanding of the relationship between them at a time prior to the instant dispute. A fair reading of the documents, and the law as relevant to them, leads to but one conclusion, namely, that the plaintiff must prevail.

In August 1967, defendants requested that Weniger obtain on their behalf a commitment for a permanent first mortgage loan for the construction of office buildings on certain premises in the District of Columbia known as Union Center Plaza. In connection with such request, a brokerage agreement was entered into between Weniger and defendants. This agreement is composed of two letter-agreements, one dated August 23, 1967 and the other dated August 25, 1967 (hereinafter the "brokerage agreement") (Exhibits 3 and 4). Pursuant to this agreement, defendants agreed to pay Weniger, upon their acceptance of a mortgage loan commitment procured by him, a brokerage commission of 1½% of the amount of such commitment. The agreement provided that Weniger's services were to be deemed fully performed and his commission was to be fully earned when the permanent first mortgage loan commitment procured by him was received and accepted by the defendants. The agreement also specified a schedule for the payment of Weniger's commission. Under this schedule, one-half of the earned commission was to be paid "on signing of commitment" and the other half was to be paid in equal installments "out of first four construction draws, or at final closing, if fewer than four draws take place." The agreement further stated that Weniger was the *"sole broker"* in the subject transaction, notwithstanding the fact

---

1. The other named plaintiff, General Resources Associates Incorporated, is no longer a party to this action. The case was dismissed as to it upon motion by the defendants (without objection by plaintiffs) at the conclusion of plaintiff's case.

that the defendants acknowledged that he was acting in cooperation with certain other co-brokers pursuant to a separate agreement between Weniger and these individuals. In this regard, it is to be noted that the agreement expressly provided that the fees recoverable thereunder would be paid directly to Weniger.

▆ In addition to the terms indicated above, the August 1967 agreement further provided for the delivery of a $10,000 good faith deposit to Weniger. The agreement stated:

> This deposit shall be returned upon execution of a loan or commitment, or upon the denial of the application for such loan or commitment, or at the expiration of 45 business days from date hereof in the event no commitment has been offered on the proposed terms.

(Exhibit 4). As to this provision, the defendants have contended that the time periods specified therein constituted a durational limitation of the brokerage agreement, reading it to mean that the agreement would expire upon the happening of any of the events specified or, at the latest, forty-five business days from August 25, 1967. The Court does not adopt this construction, but rather views this paragraph as bearing only upon the time during which plaintiff might retain the good faith deposit. Equally without probative value is the event of Weniger's return of the $10,000 check, as it adds nothing to the agreement nor does it evidence any intent on his part to terminate the August contract. The Court finds that the August 1967 brokerage agreement was of an unspecified, open-ended duration, hence, performable within a "reasonable" time.

In addition to the provisions concerning Weniger's employment, the brokerage agreement also specified various terms and conditions upon which plaintiff would present defendants' request for a permanent first mortgage commitment to the New York State Teachers Retirement Board. In essence, the agreement provided that plaintiff would

seek for defendants a permanent first mortgage loan commitment in the amount of $18,000,000 with interest at 7% per annum, for a term of twenty years, and with debt service of 8.49% constant. The agreement did not, however, either in words or substance, limit Weniger's right to obtain on defendants' behalf or their right to accept, a commitment with terms at variance from those specified in the contract.

On July 31, 1968, after a myriad of intermediate negotiations, and the issuance of informal letters of commitment by the lenders (the specifics of which are not here relevant), a formal commitment for a permanent first mortgage loan was issued to the defendants jointly by the New York State Teachers Retirement Board and the New York City Employees Retirement System. This commitment, which was accepted by Union Center Plaza Associates (per Mr. Cohn) on August 28, 1968, and thereafter amended on September 3, 1968, provided, *inter alia*, that a permanent first mortgage loan in the amount of $17,280,000 would be issued to the defendant Union Center Plaza Associates jointly by the lenders with interest and like provisions which were at variance with those initially sought by the defendants (and specified in the August brokerage agreement) (interest at 7¼% and debt service constant of 8.75% (city) or 8.55% (state) and with a term of 24 years, 5 months (city) or 20 years (state)) and, in addition, the loan was made subject to "approved leasing" of Union Center Plaza. It is not disputed herein that this commitment was procured through the efforts of Weniger (and his co-brokers). Nor is it the subject of dispute that the joint commitment was never exercised or drawn upon by defendants and that it was ultimately cancelled, unused, by the lenders.

From the facts found by the Court at this juncture, the two principal questions raised herein become apparent. The first is whether the August 1967 brokerage agreement continued in full force and effect between the parties up

to and including the point in time at which Weniger procured the formal loan commitment on behalf of the defendants. For the reasons indicated in the next succeeding paragraphs, the Court concludes that such agreement was neither abrogated nor terminated by the parties and that it was extant at such time as the formal loan commitment was issued to and accepted by the defendants. The second question presented, whether the commitment of $17,280,000 which was procured by Weniger and accepted by the defendants constituted sufficient performance under the contract as would give rise to plaintiff's right to commissions, is one of law which is discussed by the Court, *infra*.

█ It is not disputed between these parties that during the period of time between their entry into the August brokerage agreement and the issuance of the formal loan commitment numerous negotiations were conducted between them and several modifications of the brokerage agreement were proposed. The exact nature and extent of these proposed modifications need not be set forth in detail as the Court finds them to be just that, proposed modifications of the August agreement which were never accepted by the parties and thus did not attain the force of contract or serve to modify the earlier agreement. In essence, the myriad of papers passed between the parties concerned the schedule of payments of Weniger's commission and not the substance of the underlying agreement (*see, e. g.*, Exhibits 28 and 29). That the defendants considered the August brokerage agreement

wholly effective throughout the conduct of this transaction is evidenced by a letter of Mr. Cohn dated May 6, 1968 (Exhibit 31). In such letter, Mr. Cohn made reference to the August agreement and stated:

With regard thereto, this shall confirm that you have fully performed the obligations on your part to be performed in obtaining a mortgage loan commitment for a first mortgage in the sum of $17,280,000 for the above project [Union Center Plaza], to be secured by a mortgage to be given to the New York City Employees' Retirement System and the New York State Teachers' Retirement Board.

Our acceptance of the commitment letter of the New York State Teachers' Retirement Board dated December 6, 1967 (and its subsequent letters of January 12th and 22nd, 1968) and of the commitment letter dated May 1, 1968, of the New York City Employees' Retirement System shall entitle you to payment of your fees as set forth in said letter of August 25, 1967

. . . .

This letter clearly evidences the defendants' state of mind at the time of the transaction at issue and at a time prior to the instant litigation and dispute over Mr. Weniger's brokerage commissions; its probative weight is not to be discounted.[2]

In this regard, the Court finds Mr. Cohn's in-court testimony that "as far as any obligation to pay any commission was concerned I didn't have that until when, as and if this commitment would actually be funded" to be incredible and

---

2. At trial, the Court admitted Exhibit 31 into evidence as part of the *res gestae* of the case, giving defendants leave to move post-trial that the exhibit be stricken. In support of such motion defendants have cited White v. Empire Mutual Insurance Co., 59 Misc.2d 527, 299 N.Y.S.2d 998 (Civ.Ct. 1969) and Mach Manufacturing Co. v. Donovan, 86 N.J.L. 327, 91 A. 310 (N.J.Ct.Err. & App.1914), as well as numerous cases concerning statements made in attempts to effectuate a settlement of a controversy or dispute. The Court finds such authorities to

be inapposite. The Cohn letter preceded the commencement of the instant controversy and is properly a part of the evidence in this case. *See, e. g.*, Frese v. Gaston, 82 U. S.App.D.C. 173, 161 F.2d 890 (1947); Slater v. Citizens' Savings Bank, 242 App.Div. 238, 271 N.Y.S. 323 (1st Dept.1934).

In this regard, as the Court finds exhibits 43 and 44 unnecessary for the proper resolution of the controversy and, therefore, has not considered them in reaching a disposition of the claims raised, it does not pass upon defendants' motions with respect to them.

entirely without support in the other probative evidence. Such self-serving versions of conversations which, unlike other aspects of the case, are not harmonized or enhanced by the contemporaneous documentary proof are not worthy of cognizance by the Court other than in their negation. Thus, the Court unhesitatingly concludes, upon all the relevant and credible evidence, that the August 1967 brokerage agreement remained in full force and effect between these parties throughout the entire course and conduct of the subject transaction.

One final factual issue remains for discussion: the amount of plaintiff's commission, if any, recoverable herein. It is not subject to dispute that such commission, if found to be owing, would be $259,200 (1½% of $17,280,000) and that plaintiff has made a proper demand therefor. Against such sum, plaintiff concedes a partial payment from defendants of $10,000, thus reducing the amount prayed for herein to $249,200. Defendants, however, allege further payment or consideration to Weniger for his services in the instant transaction. The Court finds that this is not so. All and any consideration flowing from defendants to plaintiff, apart from the $10,000 specified above, arise from other, independent dealings between these parties and are without effect upon the amount of the claim asserted herein.

## DISCUSSION

### I. IS WENIGER THE PROPER PARTY PLAINTIFF?

The defendants mount a two-fold challenge against the propriety of Weniger's bringing of this lawsuit. First, they assert that he is not the real party in interest and that "indispensable" parties are absent from this litigation. Second, defendants claim that Weniger's asserted non-compliance with the pleading and proving requirements of the New York statutes regarding the licensing of real estate brokers bars his recovery herein.

 As to the first of these claims, the provisions of Fed.R.Civ.P. 17 and 19,

read in conjunction with the substantive law of New York, are controlling. With respect to Rule 17, Professor Moore has stated "that the true meaning of real party in interest may be summarized as follows: *An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced.*" 3A J. Moore, Federal Practice ¶ 17.07 at 221 (2 ed. 1974). In this regard, Rule 17(a) states: "Every action shall be prosecuted in the name of the real party in interest. . . . [A] party with whom or in whose name a contract has been made for the benefit of another . . . may sue in his own name without joining with him the party for whose benefit the action is brought . . . ." Thus, in light of the provisions of the August 1967 agreement, as well as the law applicable to a determination of the substantive rights of the co-brokers (discussed *infra*), the Court concludes that Weniger is the real party in interest to this controversy. The contract sued upon was made in plaintiff's name, and his alone, and the co-brokers are, at best, third party beneficiaries thereto. *Infra*, at pp. 856–857.

Similar consideration must be given to the provisions of Rule 19. Subdivision (a) of that rule provides in pertinent part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

In this diversity of citizenship case, the application of Rule 19 is governed by the decision of the Supreme Court in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed. 936 (1968), wherein the Court held "that in a diversity case the question of joinder is one of federal law. (Citations omitted.) To be sure, state-law questions may arise in determining what interest the outsider actually has (citation omitted), but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter." Id. at 125 n. 22, 88 S.Ct. at 746. In construing the Court's holding in Provident Tradesmens case, Professors Wright and Miller have summarized the rule applicable herein in these terms:

> State law clearly determines the nature of an individual's interest in a particular controversy or in the subject matter of a dispute. But the federal rules and the precedents construing them govern whether the absentee's particular interest, as defined by state law, should be treated as making his joinder desirable or imperative in an action in a federal court. This means that although state decisions as to the nature of a particular legal interest are controlling, state classifications or the labels to be applied to absent persons are not binding on a federal court.

7 C. Wright and A. Miller, Federal Practice and Procedure § 1603 at 27–28 (1972). Thus, it is incumbent upon the Court, at this juncture, to determine what, if any, rights or interests are possessed by Weniger's non-joined co-brokers under the substantive law of the State of New York.

■ As was noted above, the August 1967 brokerage agreement entered into between Weniger and the defendants states that Weniger was to be regarded as the "sole broker" thereunder and, although Weniger's co-brokers (except for Mr. Chelius) were named therein, they were not made parties to the agreement nor did they execute the involved documents. While it is obvious that plaintiff did in fact enter into an agreement with these co-brokers to divide his commissions with them, there is no evidence whatsoever of any arrangement between the defendants and the co-brokers regarding the payment of commissions and there exists no evidence which might tend to lead the Court to such conclusion. Thus while it is undoubtedly true, that these persons have an interest in any fund which Weniger might ultimately obtain from the defendants, it is apparent to this Court that whatever claim such persons may have to the proceeds of this litigation is against Weniger under their agreements with him and is collectible from him and is not with or against the defendants. On these facts, the co-brokers cannot be said to be Weniger's partners or joint obligees under the August 1967 agreement but, at best, third party beneficiaries of that contract who, as such, are not to be regarded as indispensable parties. 7 C. Wright and A. Miller, supra § 1613 at 128. The defendants have not advanced any sound reason whatever to support the contention that these persons are "indispensable" within the meaning of Rule 19.

■ Nor can these co-brokers be said to be possessed of any substantive right or interest under the law of New York. The New York cases make the proposition clear that, absent a contract or other authorization, such persons have no substantive rights against the principal broker's employer. Magoba Management, Inc. v. Central Zone Property Corp., 1 Misc.2d 760, 147 N.Y.S.2d 656 (Sup.Ct.1955); Hosinger & Bode, Inc. v. Lembo, 142 N.Y.S.2d 583 (Sup. Ct.1955). See also, E. Biskind & C. Barasch, Law of Real Estate Brokers, § 65 at 160–61 (1969);[3] 6 N.Y.Jur., Bro-

---

3. A broker with whom property is listed may not delegate his authority without his principal's consent, but this rule does not operate to prevent a broker from cooperating with another licensed broker. Such cooperation does not involve a delegation

kers § 28 at 283 and § 134 at 441 (1959 and Supp.1974). This view is not a peculiar proposition of New York law, rather, the lack of any right or interest of co-brokers in circumstances such as at bar is recognized in other jurisdictions as well.

Appellants first contend that indispensable parties were not made plaintiffs, in that the evidence disclosed that appellees had an agreement with others, not parties to the action, to divide the commission due under the contract . . . . [W]e will not assume that other brokers were indispensable parties . . . . The instant action is one to recover on a contract under which appellees and no others are entitled to a commission for services rendered, and the fact they may have agreed to divide the commission with other brokers who assisted them did not make such assisting brokers indispensable parties

of authority. But, unless the retained broker's principal consents to the retention of an assisting sub-broker, only the originally retained broker may sue his principal for commissions, since the sub-broker's rights accrue as a result of his arrangement with the principal broker, and not with the principal broker's employer.

A sub-broker or associated broker may, of course, be employed with the knowledge, consent and approval of the principal, and in such instance privity of contract either exists or may be assumed. [Footnotes omitted.]

E. Biskind & C. Barasch, *supra*. In the instant case, the August 1967 brokerage agreement provided that Weniger was "the sole broker in this transaction acting in cooperation with C. B. Murray, Donald Adams and Leonard Wilkes pursuant to a separate agreement." The agreement further provided that "the rights of participation, if any, and any fees payable for services rendered of C. B. Murray, Donald Adams, Leonard Wilkes and/or Associated Mortgage Companies, Inc., is includible in the commissions agreed to be made [in this agreement] . . . and that they [the co-brokers] have 'no independent right of commission over and beyond the agreements above." In regard to such provisions, the Court finds that while the defendants acknowledged Weniger's cooperation with these individuals and their

to an action on the contract. *They were not parties to the contract and could not have maintained any action on it.* [Emphasis added.]

Harrington v. Propulsion Engine Corp., 172 Kan. 574, 241 P.2d 733, 739–740 (1952). *See also,* 12 Am.Jur.2d, Brokers § 165 at 905–06 (1964). As the Court is of the conclusion that the appropriate parties to this action are presently at bar and that the plaintiff's co-brokers are without any substantive right or interest against the defendants which would require their joinder in this lawsuit, defendants' motion to dismiss this action for want of plaintiff's compliance with Rules 17 and 19 of the Federal Rules of Civil Procedure is hereby denied.[4]

The second aspect of defendants' contentions going to the question of parties to the instant suit is premised upon the New York statutes concerning the licensing of real estate brokers. Defend-

status as his co-brokers, they specifically provided that any rights possessed by the sub-brokers to commissions arising from the involved transaction would be derivative from Weniger's rights and not independent rights against the defendants. Thus, the Court concludes that, as formulated, the brokerage contract afforded rights against the principal for commissions only to Weniger. However, even if this were not the case and, instead, the agreement were construed as meaning that the co-brokers were "employed with the knowledge, consent and approval of" the defendants, thus in privity of contract with defendants, such would not alter the result herein. Their rights under the contract would remain derivative through Weniger and they could not, on such state of facts be considered as "indispensable" to a fair disposition of this litigation.

4. In this regard, defendants' reliance upon 28 U.S.C. § 1359 is entirely misplaced. That section, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court" cannot be availed of by a defendant who, by his own action in removing a case from state to federal court, has thereby invoked the jurisdiction of the federal court.

ants assert that a broker, who has acted in concert with other brokers and who brings a suit to recover real estate brokerage commissions arising out of such transactions, must plead and prove the licensing of his co-brokers before a recovery can be had by him, and that Weniger, in the instant case, may not have a recovery herein owing to his failure to so allege and prove.

The statutes relied upon by defendants to support this position are §§ 442 and 442–d of the New York Real Property Law, which provide in pertinent part:

§ 442. Splitting commissions

No real estate broker shall pay any part of a fee, commission or other compensation received by the broker to any person for any service, help or aid rendered in any place in which this article is applicable, by such person to the broker in buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate, unless such a person be a duly licensed real estate salesman regularly employed by such broker or a duly licensed real estate broker or a person regularly engaged in the real estate brokerage business in a state outside of New York. . . .

§ 442–d. Actions for commissions; license prerequisite

No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.

■ While it is undoubtedly true, as the above recited statute (§ 442–d) makes clear, that a broker bringing suit upon a real estate brokerage transaction may not have a recovery absent his

pleading and proving due licensing in the State of New York, such is not an issue in the present case. Weniger has proved to the full satisfaction of this Court that he was at the time of the instant transaction a duly licensed real estate broker. Rather, the question raised by the defendants is whether Weniger must also plead and prove the licensing of his co-brokers. The Court is of the view that New York law does not so require.

■ In this regard, the Court finds the cases relied upon by the defendants to be inapposite. While such cases, particularly Judge Mansfield's decision in Meltzer v. Crescent Leaseholds, Ltd., 315 F.Supp. 142 (S.D.N.Y.1970), aff'd, 442 F.2d 293 (2 Cir. 1971), properly hold that a licensed broker who has acted in concert with an unlicensed broker is to be denied his fee because of the participation of an unlicensed person in the transaction (as such denial best effectuates the purposes of § 442), they do not speak to the pleading and proving requirements contained in § 442–d. See also, Kennedy v. Huntington Hartford, 31 A.D.2d 616, 295 N.Y.S.2d 751 (1st Dept.1968); Investors Security Corp. v. Praver, 145(49) N.Y.L.J. at 14 Col. 3F (Sup.Ct. March 14, 1961) (Hofstadter, J.); cf. Strout Realty v. Phillipson, 49 Misc.2d 435, 267 N.Y.S.2d 752 (Allegany County Ct.1966); Vin Clair v. Kall & Kall, Inc., 23 Misc.2d 568, 196 N.Y.S.2d 237 (Dist.Ct.1960); 6 N.Y.Jur., Brokers §§ 95 and 98. The Court finds sufficient compliance with the statutory scheme to have been made by a plaintiff-broker (or plaintiff-brokers), when he pleads and proves at trial his own licensing at the time of the transaction in issue. The Court declines to read the pleading and proving requirements of § 442–d into the provisions of § 442 concerning the splitting of commissions. The legislature did not so provide and a fair reading of the statutory scheme (these statutes are penal in nature and thus, should be strictly construed, Reiter v. Greenberg, 21 N.Y.2d 388, 391, 288 N.Y.S.2d 57, 60, 235 N.E.2d 118 (1968);

Myer v. Jova Brick Works, Inc., 38 App.Div.2d 615, 326 N.Y.S.2d 321 (3rd Dept.1971)) embraced in these sections does not so require. If an employer seeks to avoid liability to a broker on grounds of such broker's entry into a commission-splitting arrangement with a non-licensed co-broker in violation of § 442, such employer, in the opinion of this Court, must raise the issue either by means of the affirmative defense of illegality, Fed.R.Civ.P. 8(c), asserted by its answer or by means of a motion to dismiss the complaint, Fed.R.Civ.P. 12(b). *Cf.,* Atlas v. Wood, 33 Misc.2d 543, 226 N.Y.S.2d 43, 46 (Sup.Ct.), aff'd mem., 17 A.D.2d 821, 232 N.Y.S.2d 743 (2nd Dept.1962); Brener & Lewis, Inc. v. Fawcett Publications, Inc., 197 Misc. 207, 90 N.Y.S.2d 853 (Sup.Ct.1949), aff'd mem., 276 App.Div. 994, 95 N.Y.S.2d 598 (1st Dept.1950); Bishop Estates, Inc. v. Murphy, 41 Misc.2d 719, 246 N.Y.S.2d 73 (Dist.Ct.1964). In this regard, the defense of an action for brokerage commissions upon an asserted violation of § 442 by the plaintiff broker is no different from the defense of any other action upon a contract alleging the violation of a statute as bar to recovery; illegality must be affirmatively asserted by the party seeking to invoke it. *See e. g.,* Brearton v. De Witt, 252 N.Y. 495, 170 N.E. 119 (1930). In the instant case, the defendants did not raise the issue of illegality arising from the alleged non-licensing of plaintiff's co-brokers by either of the means outlined above and, accordingly, they are now barred from seeking relief as to this claim.

In reaching the foregoing conclusion, the Court has found guidance for the decisional process in the views expressed by the Supreme Court of Arizona in a similar situation arising under a statute of similar import.

Defendants further urge that where several real estate brokers and salesmen are to participate in the compensation arising from a real estate transaction, it is not sufficient to allege that only one of them in whose name the action to collect part of the compensation is brought was a qualified real estate broker at the time the claim arose, but that the complaint must allege that all those participating were qualified and licensed, irrespective of whether they have an interest in the litigation. We do not so construe the statute. While the obvious purpose of the statute is to protect the public from the harmful results of dealing with unlicensed persons, the language employed refers only to the plaintiff's qualifications. Weir v. Galbraith, 92 Ariz. 279, 376 P.2d 396, 398–399 (1962). *See also,* Farragut Baggage & Transfer Co. v. Shadron Realty Inc., 18 Ariz.App. 197, 501 P.2d 38, 42 (Ct.App.1972); Foley v. Hassey, 55 Wyo. 24, 95 P.2d 85 (1939); *cf.,* Weinstein v. Berry, 88 N.Y.S.2d 152 (Sup.Ct.1949); Meyer Cohen Realty v. Sador Building Co., 97(4) N.Y.L.J. at 77, Col. 3T (City Ct. Jan. 6, 1937) (Geismar, J.). And *see generally,* Annot., 8 A.L.R.3d 523 (1966).

## II. CAN WENIGER RECOVER COMMISSIONS HEREIN?

By way of summary, to this point the Court has concluded: (1) that Weniger is the proper party plaintiff to this action and has complied with the New York licensing statutes in bringing his case before the Court; (2) that the August 1967 brokerage agreement governs the determination of the rights and liabilities of the parties in this action; and (3) that Weniger did procure on the defendant Union Center Plaza Associates' behalf and that defendant, by Mr. Cohn, did accept a formal commitment for a permanent first mortgage loan in the sum of $17,280,000 issued jointly by the New York State Teachers Retirement Board and the New York City Employees Retirement System. Thus, the sole issue remaining for disposition by the Court is whether such commitment as was issued to and accepted by the defendants constituted sufficient performance by Weniger under his contract as to entitle him to recover the brokerage commissions specified therein. The

Court finds that such recovery should be allowed.

In the general course of events, a mortgage broker's employment and performance thereunder is governed by the terms of his contract with the employer or, absent such, by the common law of New York.

There are varying types of employment of a mortgage broker, and correlatively varying degrees of performance required of him. These types of employment, which mirror the stages of a mortgage transaction, range from the most minimal obligations to the fully consummated loan.

A mortgage broker may thus be employed, in ascending order of obligation:

(1) To "negotiate" a loan;

(2) To procure the acceptance of the borrower's *application* for a loan;

(3) To procure a *commitment* by the lender;

(4) To procure *acceptance of the commitment by the borrower*;

(5) To procure the *consummated loan*.

The broker's right to compensation matures when the stipulated event has occurred. Thus an employment "to negotiate" a loan requires the broker only to find a lender ready, able and willing to lend on terms set by the borrower and need not wait until the transaction is completed. In the third and four [sic] instances, *supra*, commission is earned when the lender has issued a commitment or when it has been counter-accepted by the borrower —again without the necessity of the consummation of the loan. It is only when the broker stipulates that a completed loan is a condition to the earning of compensation—and that such consummation must take place to entitle him to his commission and, even here, if the borrower is at fault the condition is excused.

E. Biskind & C. Barasch, *supra*, § 75 at 59–60 (Supp.1973). In the instant case, Weniger's employment comes within the terms of the third and fourth categories recited above, in that the August 1967 agreement provided:

You [defendants] expressly warrant that my [plaintiff] services in procuring a loan commitment are fully performed at the time such commitment is received and accepted by you. . . . (Exhibit 3).

Thus at such point in time as Weniger procured the joint commitment of the State Teachers Board and the City Retirement System for a permanent first mortgage loan and this commitment was accepted by defendant Union Center Plaza Associates, his work, under the terms of the contract, was complete and his right to compensation thereunder had fully accrued. *See, e. g.*, Smith v. Peyrot, 201 N.Y. 210, 94 N.E. 1098 (1911); Eichenbaum v. Taxicab Independent Owners' Auto Mutual Cas. Co., 136 Misc. 58, 240 N.Y.S. 499 (City Ct.1930). As was well stated by Justice Hogan in Grace v. Norwich Green Homes, Inc., 144 N.Y.S.2d 62, 63 (Sup.Ct.1955):

Where the mortgage broker has procured commitments and these are accepted by the developer, the former has performed all of the services required of him and the developer's obligation accrues at that time, unless the employment contract between the parties otherwise specifies.

*See also*, Sonnenblick-Goldman Corp. v. Murphy, 420 F.2d 1169 (7 Cir. 1970); Dubin-Weston, Inc. v. Palladino, 73 Civ. 4147 (JMC) (S.D.N.Y. April 4, 1974) (Cannella, D. J.); 6 N.Y.Jur., Brokers § 125 at 424–29.

In this regard, the fact that the commitment which issued to and was accepted by the defendants, $17,280,000, differed from the commitment initially sought by them, $18,000,000, does not, in this Court's view, serve to deprive the broker of his right to compensation under the contract.

The fact that the parties [lender and borrower] . . . ultimately agree on terms which differ from

those which the [borrower] gave the broker in employing the latter does not preclude recovery of the commission to which the broker is otherwise entitled. Where a broker instead of procuring a person who is ready, able, and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counter offer more or less at variance with that of his employer, the latter is at liberty either to accept the proposed party upon the altered terms or to decline to do so. If he accepts he is legally obligated to compensate the broker for the services rendered, subject to such change from the amount originally agreed upon as the variation demands, but if he refuses he incurs no liability therefor.

6 N.Y.Jur., Brokers § 111 at 397. *Accord,* Gilder v. Davis, 137 N.Y. 504, 33 N.E. 599 (1893); O'Glee v. Trigg, 271 F.Supp. 121, 125–126 (E.D.Ark.1967) (restating the common law rule); 12 Am.Jur.2d, Brokers § 185 at 925–26.

■ Similarly, the Court finds defendants' reliance upon Ivor B. Clark, Inc. v. Boston Road Shopping Center, Inc., 24 Misc.2d 84, 207 N.Y.S.2d 582 (Sup.Ct.1960), unavailing in the present case. The defendants point to that portion of the loan commitment which makes it subject "to approved leasing" and assert that such provision renders the commitment conditional, hence unenforceable as a contract and therefore, that plaintiff, having failed to procure an enforceable commitment, can have no recovery herein. In the view of this Court, however, the formal commitment which was issued to and accepted by the defendant Union Center Plaza Associates constituted a valid and enforceable contract. Indeed, the term "to approved leasing" was given a definite and certain meaning by the parties. This is reflected in a letter dated July 31, 1968 by Mr. Cohn to the lenders which clearly evidences their understanding with regard to the term "approved leasing" (Exhibit 18).[5] Unlike the *Ivor B. Clark* case, the instant commitment did not require "defendant and the lending institution to agree in the future as to the open, essential elements of the transactions," thus rendering it "too indefinite to be enforced," and not sufficient to constitute a binding commitment. 207 N.Y.S.2d at 589. Here, there was plainly a meeting of the minds of the parties as to what the term "approved leasing" meant, and, indeed, such phrase had been inserted in the document at the in-

5. Exhibit 18 provides in pertinent part:

In accepting the commitment the undersigned fully understand and agree that the phrase "subject to approved leasing" as employed in said commitment is intended, and shall mean, that the Lender shall have sole and unreviewable discretion to determine whether Tenants and the leases are acceptable in all respects, including but not limited to—as to Tenants—the identity and financial responsibility of the Tenant; and—as to leases—whether all of the terms of the leases are so acceptable in all respects, including but not limited to, the term of the lease; the rents payable; the services to be rendered by the Landlord; the noncancellability of the lease and escalation for increased taxes and operating costs. The undersigned understand that the Lenders would not deem leases acceptable unless: (i) the rentals for all office space in the South Building, which shall be rented as a unit, would be at a rate of at least $1,060,000 per annum (or if less, then the Tenants shall have assumed operating expenses normally borne by the Landlord to render the rentals an equivalent of such rate); (ii) that the rentals for all office space in the North Building, which shall be rented as a unit would be at a rate of at least $1,635,235 per annum (or if less, then the Tenants shall have assumed operating expenses normally borne by the Landlord to render the rentals the equivalent of such rate); (iii) that leases for such office space would be for a term of twenty (20) years without right to cancel earlier except in relation to destruction or eminent domain; (iv) that there would be escalation approximately every five (5) years for increased taxes and increased operating expenses.

sistence of the defendants, as they considered the previous reference to General Services Administration leasing inappropriate (and, perhaps, unlawful). As the Court of Appeals for the Seventh Circuit well stated in Sonnenblick-Goldman Corp. v. Murphy, 420 F.2d at 1173 n. 7:

> The holding in Clark, Inc. v. Boston Road Shopping Center, 24 Misc.2d 84, 207 N.Y.S.2d 582 (1960), cited by defendant, is inapposite to the instant case. In *Clark*, the court held that a requirement in the contract entered into between the Shopping Center and the lender, which conditioned the loan on the former's obtaining satisfactory leases, rendered the contract unenforceable since the court interpreted "satisfactory" as meaning subjectively acceptable to both parties. In the instant case, however, the contract between Heller and defendant provided for "reasonable" reserves, thus eliminating the subjective qualification which was fatal to the contract in *Clark*. Moreover, in Boston Road Shopping Center, Inc. v. Teachers Ins. & Annuity Assoc., 13 A.D.2d 106, 213 N.Y.S.2d 522, 526 (App.Div.1961), aff'd 11 N.Y.2d 831, 227 N.Y.S.2d 444, 182 N.E.2d 116 (1962), a higher court, in a case involving the same loan commitment as in *Clark*, held that the contract was enforceable since reasonableness was implicitly included in its terms.

So too, in the instant case (in light of the Cohn letter dated July 31, 1968), the Court finds the term "approved leasing" to have been divested of any subjective import. To the extent that Justice Amsterdam's decision in *Ivor B. Clark* is otherwise inconsistent with the position adopted herein, this Court declines to follow it as not properly reflecting the present state of New York law. *See, e. g., Boston Road, supra*; Richard Bruce & Co. v. J. Simpson & Co., 40 Misc.2d 501, 243 N.Y.S.2d 503 (Sup.Ct.1963); 1A A. Corbin, Corbin on Contracts § 161 and § 165 (1963 and Supp.1971). In any event, the defendants accepted the commitment as issued by the lenders and, having done so, may not now be heard to quarrel with its terms as predicate for denying Weniger his just due. *See,* discussion, *supra.*

Lastly, the fact that the mortgage loan procured by Weniger was never consummated or "closed" by the defendants and the lenders does not serve to defeat the broker's right to commissions as specified in the August 1967 agreement. In this regard, the agreement (Exhibit 4) provided that Weniger's commission would be deemed earned "upon acceptance" of a commitment by the defendants. However, the contract further stated that plaintiff would accept payment of his compensation "¾ per cent on signing of commitment, balance in equal parts out of first four construction draws or at final closing, if fewer than four draws take place." On the basis of the latter quoted provision, defendants contend that if plaintiff is entitled to any payment under the agreement, such should be limited to the ¾% available to him upon the signing of the commitment, as it is not subject to dispute that the later specified events did not transpire.

The law of New York concerning the issue presently under consideration is well settled. The general rule is that unless the broker and his employer have expressly stipulated to the contrary, the broker is entitled to his compensation upon completion of his obligations under the contract of employment, irrespective of whether or not the commitment negotiated is ever consummated. However, as is indicated above, the parties to a brokerage agreement are free to vary this general rule to any extent and they may properly *condition* the broker's right to compensation upon the happening of a specified event, such as closing, or upon any other occurrence. These principles have been summarized

by the New York Court of Appeals in the following terms:

> [I]t is a well-settled rule in this State that in the absence of an agreement to the contrary, a real estate broker will be deemed to have earned his commission when he produces a buyer who is ready, willing and able to purchase at the terms set by the seller (see, e. g., Hecht v. Meller, 23 N.Y.2d 301, 296 N.Y.S.2d 561, 244 N.E.2d 77; Levy v. Lacey, 22 N.Y.2d 271, 292 N.Y.S.2d 455, 239 N.E.2d 378; Wagner v. Derecktor, 306 N.Y. 386, 118 N.E.2d 570; O'Hara v. Bronx Consumers Ice Co., 254 N.Y. 210, 172 N.E. 472; Colvin v. Post Mtge. & Land Co., 225 N.Y. 510, 122 N.E. 454; Reis Co. v. Zimmerli, 224 N.Y. 351, 120 N.E. 692; Davidson v. Stocky, 202 N.Y. 423, 95 N.E. 753; Smith v. Peyrot, 201 N.Y. 210, 94 N.E. 662; Gilder v. Davis, 137 N.Y. 504, 33 N.E. 599). Thus, in *Hecht* (*supra*) we sustained a broker's claim to a commission notwithstanding the fact that the contract between buyer and seller was unenforceable due to the Uniform Vendor and Purchaser Risk Act (General Obligations Law, Consol. Laws, c. 24-A, § 5–1311). As the court wrote (*Hecht,* 23 N.Y.2d, *supra,* at p. 305, 296 N.Y.S.2d at p. 563, 244 N.E.2d at p. 79): "At the juncture that the broker produces an acceptable buyer he has fully performed his part of the agreement with the vendor and his right to commission becomes enforcible [sic]. *The broker's ultimate right to compensation has never been held to be dependent upon the performance of the realty contract or the receipt by the seller of the selling price unless the brokerage agreement with the vendor specifically so conditioned payment.* (See, e. g., Levy v. Lacey, *supra,* 22 N.Y.2d p. 274, 292 N.Y.S.2d 455.) As we stated in Gilder v. Davis (*supra,* 137 N.Y. p. 506, 33 N.E. p. 600): 'If from a defect in the title of the vendor, or from a refusal to consummate the contract on the part of the purchaser for any reason, in no way attributable to the broker the sale falls through, nevertheless the broker is entitled to his commissions, for the simple reason that he has performed his contract.' " [Emphasis in original] *The parties are, of course, free to provide otherwise by agreement. For example, they can condition the seller's liability on the closing* of title or require the broker to supply a buyer to purchase the property at a specified price "with terms to be arranged." *In the former case the broker would not earn a commission if the deal were not consummated* (see Levy v. Lacey, *supra,* 22 N.Y.2d, at p. 274, 292 N.Y.S.2d at p. 457, 239 N.E.2d at p. 379) and in the latter situation, there would be no commission if terms were not arranged (see Kaelin v. Warner, 27 N.Y.2d 352, 318 N.Y.S.2d 294, 267 N.E 2d 86, decided Jan. 13, 1971). *It should be observed, however, that even where the broker and seller expressly provide that there shall be no right to a commission unless some condition is fulfilled, and the condition is not performed, the seller will nevertheless be liable if he is responsible for the failure to perform the condition* (Levy v. Lacey, supra, 22 N.Y.2d at p. 276, 292 N.Y.S.2d at p. 459, 239 N.E.2d at p. 381, compare with Warnecke v. Countrywide Realty, 29 A.D.2d 54, 285 N.Y.S.2d 428, affd. 22 N.Y.2d 823, 292 N.Y.S.2d 917, 239 N.E.2d 656, mot. for rearg. den. 22 N.Y.2d 972). [Emphasis Added.]

Lane-The Real Estate Department Store v. Lawlet Corp., 28 N.Y.2d 36, 42–43, 319 N.Y.S.2d 836, 840–841, 268 N.E.2d 635 (1971) (and the cases therein cited). *See also,* Trade Properties, Inc. v. Ziminski, 75 Misc.2d 606, 348 N.Y.S.2d 476 (Sup.Ct.1973); 6 N.Y.Jur., Brokers §§ 113 and 114; 3A A. Corbin, *supra* § 768.

Thus, the question here raised resolves into whether, by virtue of the "deferred" payment provision of their agreement, the parties at bar agreed to

condition Weniger's fee, otherwise clearly owing as of defendant's acceptance of the commitment, upon the happening of the specified events, construction draws or closing. While this Court is not wholly persuaded that the intent of the parties was to so condition the commission, as opposed to simply deferring its payment as an accommodation to the defendants' financial weaknesses,[6] we here assume *arguendo* that they did. Such an assumption, however, does not affect the result otherwise pertaining on these facts.

■ As the Court of Appeals indicated in *Lane,* even in instances where the parties have conditioned payment of a broker's compensation upon the happening of a designated event, the employer "will nevertheless be liable [to the broker] if he is responsible for the failure to perform the condition."

As was pointed out above, however, such an agreement [a condition precedent] will not absolve the seller of the obligation of paying a commission where the sale fails of completion through the seller's own fault . . . . [I]t must be noted that our decisions discussing when a condition in a brokerage agreement that title actually close will be deemed waived speak of "fault" (see, e. g., Colvin v. Post Mortgage & Land Co., 225 N.Y. 510, 516, 122 N.E. 454, 455), "defendant's own wrong" (Wagner v. Derecktor, supra, 306 N.Y. p. 391, 118 N.E. 2d p. 573), "waiver" or "active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition" (Amies v. Wesnofske, supra, 255 N.Y. [156] p. 163,

174 N.E. [436] p. 438), and the vendor's "refus[ing] to perform his obligations under the contract of sale" (Stern v. Gepo Realty Corp., 289 N.Y. 274, 277, 45 N.E.2d 440, 442).

Levy v. Lacey, 22 N.Y.2d 271, 276, 292 N.Y.S.2d 455, 459 (1968).

In the instant case, the Court finds as fact that the events specified in the payment provision of the brokerage agreement failed to occur solely as the result of defendants' conduct and their failure to consummate the permanent mortgage loan procured by Weniger. Thus, the Court finds defendants to be at fault in the failure of the conditions precedent to plaintiff's commission, in that they failed or refused to make certain "good faith deposits" required by the lenders under the loan commitment and otherwise acted in a manner inconsistent with their obligations thereunder, thereby causing the lenders to terminate the commitment in September 1969. Such being the case, defendants cannot now invoke the conditions precedent recited in the August 1967 agreement as a bar to plaintiff's claim.

If a promisor himself is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure. [Citations omitted.] "It is a well settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." Young v. Hunter, 6 N.Y. 203, 207. "It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it." Williston on

---

6. If the payment schedule specified in the August 1967 agreement is viewed as simply that, a payment schedule and not a condition precedent to Weniger's right to a commission, it is then clear that the fact that the mortgage loan procured by Weniger was never consummated by the defendants and the lenders could not serve to defeat Weniger's claim, as he then must be viewed as having earned his fee upon the defendants' acceptance of the commitment. This is so, because the agreement, viewed in such fashion, did not require Weniger to procure a completed loan on the defendants' behalf, but rather, merely to procure a loan commitment which was accepted by the defendants. *See, e. g.,* Dubin-Weston v. Palladino, *supra;* Lane-The Real Estate Department Store, Inc. v. Lawlet Corp., *supra;* Hecht v. Meller, 23 N.Y.2d 301, 305, 296 N.Y.S.2d 561, 563, 244 N.E.2d 77, 78 (1968); Smith v. Peyrot, 201 N.Y. at 214, 94 N.E. at 663; E. Biskind & C. Barasch, *supra,* at 60.

Contracts, vol. 2, § 677. The American Law Institute, in its "Restatement of the Law of Contracts" (Tentative Draft No. 6, § 289), under the heading "Excuse of Condition by Prevention or Hindrance," says: "If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused, and the actual or threatened non-performance of the return promise does not discharge the promisor's duty." The doctrine is purely one of waiver; active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute.

Amies v. Wesnofske, 255 N.Y. 156, 162–163, 174 N.E. 436, 438 (1931). *See also,* Kooleraire Service & Installation Corp. v. Bd. of Educ., 28 N.Y.2d 101, 320 N.Y.S.2d 46, 268 N.E.2d 782 (1971); Schefler v. Livestock & Cas. Ins. Co., 44 A.D.2d 811, 355 N.Y.S.2d 608 (1st Dept.1974); 3A A. Corbin, *supra* §§ 768 and 769. The condition having failed upon the defendants' own conduct and through no fault of the plaintiff, Weniger may now recover his commission as prayed for in the complaint.

### CONCLUSION

For the reasons stated above, the Court finds and concludes that plaintiff, Sidney N. Weniger, is entitled to recover brokerage commissions from the defendants, jointly and severally, in the sum of $249,200, together with interest and costs as prayed for in the complaint. The Court further finds and concludes that the defendants' counterclaim should be, and it hereby is, dismissed.

The foregoing constitute the findings of fact and conclusions of law of the Court pursuant to Fed.R.Civ.P. 52(a).

Submit an order and decree in conformity herewith.