Thomas P. Parley, J.
This action for breach of contract was tried before the court without a jury. The plaintiff is a builder of large suburban shopping centers; the defendant is a broker who is sometimes retained as rental agent for the leasing of stores located within shopping centers. From the evidence adduced at the trial, I am satisfied that the plaintiff proved the making of the contract alleged in the complaint, i.e., “In or about May 1950, defendant represented and agreed that if plaintiff would purchase, directly or indirectly, real property known as the Midhattan Property, located at Central Avenue and Cross County Parkway, Yonkers, New York, and build a shopping center thereon, defendant would pay the plaintiff the sum of $10,000 in reimbursement of monies to be expended in connection therewith.” I further find that in reliance on the defendant’s promise aforesaid, the plaintiff, through the medium of a solely owned corporation, Cross Properties, Inc., purchased and improved the subject property with the “ Cross County Center ” Shopping Center, expending sums in excess of $10,000.
The defendant, however, has raised four points in defense of this action which warrant consideration; (a) that it is barred by the Statute of Limitations; (b) that the contract is illegal; (c) that there is want of consideration to support his promise and (d) that the performance by the plaintiff’s wholly owned corporation cannot be treated as performance by the individual plaintiff.
The first defense was effectively waived by the defendant in a signed stipulation wherein he stated that the settlement of a separate action pending in Supreme Court, Westchester County, was “ without prejudice to the claim of Sol G. Atlas against C. Van Ness Wood, by virtue of a letter agreement dated April 11,1951 written by C. Van Ness Wood to Sol G. Atlas, and without prejudice to any defenses C. Van Ness Wood may have against any claim made by Sol G. Atlas, except that C. Van Ness Wood agrees that the Statute of Limitations with regard to said claim shall not commence to run prior to December 31, 1955 ”. The instant action was commenced within six years from that date. The letter of April 11, 1951 referred to in the stipulation *545 is plaintiff’s Exhibit 2 which confirms the oral agreement sued upon in the following language:
“I [the defendant] should like to confirm to you my oral understanding made with you prior to your signing of the contract to purchase the Midhattan property at Central Avenue and the Cross County Parkway, Yonkers, Ñ. Y.
1 ‘ The same was to the effect that, as an added inducement to you to purchase the same and build the project I would pay you out of my commissions earned by me under the various leases to be made to the various tenants of the Cross County Center, the sum of Ten Thousand ($10,000.) Dollars.”
The defendant seeks to defeat the clear meaning and effect of his stipulation extending the period for the commencement of the running of the Statute of Limitations by asserting that it was given without any consideration.
Ordinarily stipulations made by adverse parties or their authorized attorneys in a lawsuit are enforcible in the absence of consideration (Ross v. Ferris, 18 Hun 210; 1 Williston, Contracts [3d ed.], § 204A). However, the plaintiff in this action was not a party to the action out of which this stipulation arose although his wholly owned corporation, Cross Properties, Inc., was. The defendant reasons that the corporate entity must be observed and that since he received no consideration from the plaintiff, Atlas, he is not bound by his stipulation. The fact is, however, that as part of the settlement of the Westchester County action, the plaintiff individually guaranteed payment of $76,000 in corporate notes which Cross Properties, Inc., gave to the defendant. This undertaking is sufficient consideration to support the defendant’s obligation under the stipulation.
Insofar as the defendant’s belated and unpleaded claim of illegality is concerned, there is insufficient evidence to establish that the plaintiff and defendant made any agreement for ‘ ‘ splitting commissions ’ ’ in violation of section 442 of the Real Property Law. The only possible basis for such a claim is the language in the defendant’s letter of April 11, 1951 wherein he confirmed his obligation to pay the plaintiff the sum of $10,000 “ [o]ut of * * * commissions earned * * * under the various leases to be made to the various tenants of the Cross County Center ”. The evidence supports the interpretation that the quoted language merely referred to the source of the funds which the defendant anticipated using to pay his obligation rather than that there was an agreement to split commissions. Even assuming, however, that there was an agreement between the parties to split commissions, it would not necessarily be unenforcible because of illegality. In J. L. Holding Co. v. Reis *546 (240 N. Y. 424) the Court of Appeals held that there was nothing illegal about a contract wherein a firm of brokers promised to pay $5,000 out of anticipated commissions to an owner where the promise was made to induce the owner to effect the exchange of its property. The same reasoning would seem applicable to this case, the only distinction being that the plaintiff here was being induced to acquire property rather than exchange it.
Nor is the defendant’s promise unenforcible for lack of consideration. The defendant’s contention that a quid pro quo running to the promisor is always requisite to support a promise is incorrect. It is well settled that, in addition to a benefit received by the promisor, a detriment suffered by the promisee at the promisor’s request and as the price for the promise is sufficient. This is so even though the promisor receives no benefit whatsoever (Allegheny Coll. v. National Chautauqua County Bank, 246 N. Y. 369, 373; Hamer v. Sidway, 124 N. Y. 538) although, in the usual case, he will. The legal detriment which the plaintiff suffered in this case is that he performed acts and incurred expenses which he was not obliged to do at the request of the defendant and upon the strength of his promise (see 1 Williston, Contracts [3d ed.], § 102A; Restatement, Contracts, § 76). These acts are sufficient consideration to hold the defendant to his promise. Moreover, the defendant did, in fact, derive a benefit from the plaintiff’s acts for the understanding between the parties was that if the plaintiff purchased the property and improved it as a shopping center, he would employ the defendant as rental agent. If this occurred, the defendant stood to realize many thousands of dollars in commissions. The plaintiff had been considering the Midhattan project shortly before the defendant made his promise, but was hesitant to undertake it because of zoning and engineering problems and the existence of certain deed restrictions. The defendant’s offer to put $10,000 into the deal was to encourage the plaintiff to go ahead, the $10,000 being used to defray some of the extraordinary expenses which were anticipated for leg*al fees in connection with the rezoning and removal of restrictions and engineering fees. The plaintiff acted upon the promise in the classic unilateral contract situation (see 1 Corbin, Contracts, §§ 63, 70; Petterson v. Pattberg, 248 N. Y. 86).
The defendant’s last contention raises the issue whether the expenditures made by Cross Properties, Inc., in developing the Midhattan property should be considered the same as if made by the plaintiff personally. The determination of this issue presents a somewhat unique situation where, rather than being used as a shield to protect a sole stockholder, the corporate veil *547 is sought to he used as a sword by an adverse party who claims that performance by the plaintiff’s wholly owned corporation is not performance by the plaintiff. The evidence bears out the fact that throughout the entire course of dealing, the defendant dealt with the plaintiff and Cross Properties, Inc., as one and the same. Defendant’s letter of April 11, 1951, for example, was addressed to the plaintiff although title to the Midhattan property had already been taken in the corporate name. Defendant testified at his examination before trial which was read into the record at the trial: “ I did not think that he [the plaintiff] would buy it [Midhattan property] personally. No one generally buys real estate for a shopping center in person. ’ ’ After first advancing approximately $5,000 of his personal funds for title company charges and preliminary surveys of the property, the plaintiff formed Cross Properties, Inc.; he financed it and delegated to it the further performance of the contract using it in his subsequent operations as though it were himself acting. In Restatement of Contracts (§ 160, subd. [3]), there is the following general statement as to when performance of a contract can be delegated:
“(3) Performance * * * by a person delegated has the same legal effect as performance * * * by the person named in the contract, unless,
“ (a) performance by the person delegated varies * * * materially from performance by the person named in the contract as the one to perform, and there has been no such assent to the delegation as is stated in § 162, or
“ (b) the delegation is forbidden by statute or by the policy of the common law, or
“ (c) the delegation is prohibited by contract.”
Here the defendant anticipated, knew of and acquiesced in the plaintiff’s vicarious performance of the contract through the corporate vehicle; he received everything he bargained for from the plaintiff through Cross Properties, Inc., including substantial commissions. Throughout the course of dealings between the parties, the defendant never raised an objection to the delegation. Under these circumstances, defendant’s fourth and last defense must fail.
Plaintiff is accordingly entitled to judgment in the amount of $10,000, with interest from December 31, 1951, costs and disbursements.