**MOTEL SERVICES, INC.**

v.

**CENTRAL MAINE POWER COMPANY**

v.

**WATERVILLE HOUSING AUTHORITY.**

Supreme Judicial Court of Maine.

Nov. 30, 1978.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier (orally), Waterville, for plaintiff.

Jon S. Readnour (orally), Augusta, for Central Maine Power Co.

Alan C. Sherman (orally), Waterville, for Waterville Housing Authority.

Before POMEROY, WERNICK, ARCHI-BALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This is an appeal from a final judgment entered in favor of Central Maine Power Company (CMP), the defendant and third party plaintiff. The third party action

against Waterville Housing Authority (WHA) was dismissed. No cross-appeal was taken. The case was heard by a single Justice, sitting without a jury.

On August 5, 1971 Motel Services, Inc. entered into an agreement with WHA whereby Motel Services would build two housing projects for WHA on a *"turnkey"* basis. After the agreement became effective, appellant sought to change the construction specifications to provide for an electrical rather than an oil heating system. Appellant sought this change in order to qualify for a promotional allowance given by CMP to the

> owner of a home—either new or existing—which is initially built for or converted to the use of electricity as the primary method of heating . . . , provided that the installation of such electric heating equipment complies with the Company's "Standard Requirement— Electric Service and Meter Installation" and "Standards of Insulation For Use with Electric House Heating."

Appellant took the initiative in persuading WHA and the Federal Department of Housing and Urban Development (HUD) to consent to the modifications. Appellant, with CMP's assistance, demonstrated that electric heating was ultimately more economical; appellant also promised to reduce its contract price by $16,000 if the change was approved. Both WHA and HUD agreed to the modification. Appellant never informed either agency of the existence of the promotional allowance, however, despite the fact that approximately $8,000 of the $16,000 reduction was due to appellant's expectation of receiving the allowance.

After the electrical system had been completely installed, but before all the *"Standards"* required by CMP had been complied with, appellant conveyed both premises to WHA. This conveyance prior to final completion was designed primarily to avoid the imposition upon appellant of the tax to be exacted on April 1. The projects, however, were completed after closing to the full satisfaction of WHA and in compliance with the CMP standards.

After inspection of the premises by a CMP employee, the appropriate forms for receipt of the allowance were prepared. Unaware that appellant expected the allowance, the employee sent the forms and eventually the allowance to WHA, the owner on the date of completion of the projects. Appellant brought this action against CMP, claiming it was entitled to the allowance. CMP sued WHA in a third party action seeking return of the allowance in the event of a judgment in appellant's favor.

The Justice below made findings of fact and conclusions of law. Most significantly, these included a finding that appellant had not fully complied with the requirements of the allowance policy prior to conveyance of the property. Having concluded that CMP's policy was a standing offer to enter into a unilateral contract, the presiding Justice ruled that appellant did not fully perform prior to relinquishing ownership, and no enforceable contract was therefore produced.

## I.

■ Our first conclusion, which we have little difficulty in reaching, is that WHA is not entitled to the allowance. Not having known of it prior to completion of the construction, WHA provided no consideration, and did not bargain for it. The completion of the claim forms does not constitute performance of the acts requested by the offer; any claim that appellant acted merely as agent of WHA in installing the system is of no significance in the face of the fact that, even assuming such an agency, WHA did not purport to direct its agent to perform the work so as to accept the offer and complete the contract. *See 1 Williston on Contracts,* §§ 33B, 67A (1957); *Restatement of Contracts,* § 53, 17 C.J.S. *Contracts* § 41d.

## II.

■ The Court below correctly characterized CMP's marketing policy as an offer to enter into a unilateral contract. Despite the general rule that contracts are pre-

sumed to be bilateral, *Restatement of Contracts*, § 31, the presumption is rebutted by the clear import of the offer, which requested not a promise to perform, but complete performance in accordance with its terms. Such is the essential hallmark of a unilateral contract.

We find error, however, in the presiding Justice's interpretation of the law of unilateral contracts. Specifically, the Court erred in ruling as a matter of law that *"[i]f an act is required in return for a promise, that act and only that act and the whole of that act must be performed or there is no contract."* *Brackenbury v. Hodgkin,* 116 Me. 399, 401, 102 A. 106 (1917). Our reading of *Brackenbury,* however, leads us to a different conclusion.

In *Brackenbury,* a mother invited her daughter and son-in-law to move from Missouri to Maine in order to take care of the mother, promising to the couple the use and income of the mother's farm, and the bequest of it upon her death. After the couple moved to Maine, the mother became dissatisfied with the arrangement and conveyed the farm to another child. Brackenbury and his wife then sued to determine their rights.

The Court imposed a trust in favor of plaintiffs, holding that the mother had made an offer to form a unilateral contract, which the couple accepted:

> The plaintiffs here accepted the offer by moving from Missouri to the mother's farm in Lewiston and *entering upon the performance of the specified acts,* and they have continued performance since that time so far as they have been permitted by the mother to do so. *The existence of a completed and valid contract is clear.* 116 Me. 399, 401, 102 A. 106, 107 (Emphasis supplied).

The offer thus was accepted, and formed a binding contract, by *part* performance. This reading is in accord with the vast majority of other jurisdictions, and with the preeminent authorities. *See Restatement*

(2nd) *of Contracts* § 45 (1973); *Corbin on Contracts* §§ 49, 63 (1963).[1]

■ In the instant case, it is clear that when appellant undertook to install the heating system in accordance with CMP's policy, it was not only entitled—as owner of the homes—to accept the offer, but in fact did so. Appellant's failure to notify CMP of its acceptance, in the context of an offer of a unilateral contract, does not undermine the validity of the acceptance. *See 1 Williston on Contracts,* § 68 (3rd ed. 1957).

However, while CMP's offer was rendered irrevocable by appellant's acceptance, payment of the allowance remained contingent upon appellant's completion of the required performance.

### III.

Appellees set forth two grounds by which they contend that appellant failed completely to perform. First, appellant did not complete the final steps necessary to claim the allowance, namely, the submission of the forms to CMP. Second, appellant was no longer the owner of the buildings at the time it fully complied with CMP's construction standards.

The first contention is unpersuasive. Appellant failed to fill out the requisite forms because CMP sent them to WHA, and instructed WHA on how to complete them to claim the allowance. It is undisputed that, had CMP provided the forms, appellant would have completed this final requirement.

■ Where the offeree of a unilateral contract is prevented from completing performance by the actions of the offeror, such failure will not be a defense to an action by the offeree on the contract. *Brackenbury v. Hodgkin, supra,* at 402, 102 A. 106; *1 Williston,* § 74A, p. 246.

■ Appellee's second argument presents a more substantial issue, but is likewise unpersuasive, in the last analysis. The fail-

---

1. Professor Corbin discusses *Brackenbury* in some detail, as illustrative of the rule that part performance by the promisee renders an offer of a unilateral contract irrevocable. *See Corbin on Contracts,* § 49.

ure of appellant to maintain his *"owner"* status through the period of completion of work does not, we think, preclude recovery.

CMP extended its offer

*to the owner of a home . . . which is initially built for or converted to the use of electricity as the primary method of heating . . . . An allowance will be paid at the above stated rate [also] to owners of homes, which use electricity . . . who install additional electric heating . . . .*

Appellant was the owner of the buildings under construction until April 1, when it persuaded WHA to accept an early conveyance of the property in order to protect themselves from an imminent property tax imposition. Appellees contend that such transfer, occurring prior to full compliance with CMP's standards,[2] precluded appellant from entitlement to the allowance.

We do not agree.

The offeror is the master of his offer, and is entitled to establish such standards of acceptance, notice, and the like as he sees fit. Among such powers is the right to designate the person, persons, or class of persons entitled to accept the offer. 1 *Williston*, § 80; *1 Corbin* § 64; 17 C.J.S. *Contracts* § 40, n. 30. In this case, CMP's offer was explicitly limited to acceptance by *"owners"*. Appellant, at the time it undertook to perform the requested acts, was owner of the buildings and entitled to, and did, accept the offer.

CMP contends that a major purpose of its policy of requiring adequate insulation as a prerequisite to payment of the allowance was to insure that the customer would obtain satisfactory results from his heating system. Therefore, it urges, the emphasis in the quoted passage should be upon the word *"use"*; the allowance was intended to go to the *"user"* of the system, who was in most cases also the owner. Thus the crucial determinant respecting entitlement to the allowance was the identity of the user, rather than the owner.

CMP's management aims in developing its policy, however, are less important than its outward manifestations. We believe that a plain reading of the offer leads to the conclusion that the class of offerees consisted of owners of homes who undertook to install electrical heating equipment. No conditions are attached to the offer plainly indicating a requirement that the owner occupy the home and use the system after installation. Indeed CMP admitted that no such requirement had ever been imposed. Any emphasis CMP chose to place on who the *"ultimate user"* was is absent from the terms of the offer. It is to those terms that we must look in determining the class of persons empowered by CMP to accept its offer.

We think the status of *"owner"* to be relevant only at the point where the offer was irrevocably accepted. Once the offer has been validly accepted in compliance with its terms, it ceases to exist, and a new legal relationship—a binding unilateral contract contingent only upon full performance—comes into being.

 No cases in the present context have been cited to us, and we have discovered none, in which a change in status of the offeree after acceptance has been deemed a ground for avoiding a valid contract. Only in the relatively rare case of a personal service contract requiring the unique talents of the original offeree has such avoidance been allowed. Even those few cases may be distinguished in that such a change in status must be one which affects the adequacy of the product bargained for, as where an artist engaged to paint a portrait is disabled during the course of performance, and loses the skill he once possessed. In other circumstances, where the resultant product is that which was bargained for, it is no defense that the original offeree did not personally complete performance, or did not do so in precisely the same status in which he accepted the offer and undertook

2. The presiding Justice below found as a fact that appellant had substantially performed all that was required to entitle him to the allow-ance. He placed the amount of uncompleted work at the time of conveyance at 10% of the total.

to perform. *See Atlas v. Wood,* 33 Misc.2d 543, 226 N.Y.S.2d 43 (1962); *Eastern States Agr. and Ind. League v. Vail's Estate,* 97 Vt. 495, 124 A. 568, 574–575, 38 A.L.R. 845 (1924).

Here, CMP received what it had bargained for by the terms of its offer. The owner of a home undertook to install an electric heating system; 90% of the work was completed before the property was conveyed, the remaining details shortly thereafter. Had appellant retained title to the property until it received the allowance, and conveyed it immediately thereafter, there is no doubt but that the case would not be before us. We are not convinced that the conveyance should change the result.

Since CMP did not file a cross-appeal, there is nothing we can do to set aside the order dismissing the cross-complaint. *See Murray v. Waterville Bd. of Education,* Me., 390 A.2d 516, 518, n. 5 (1978); *Littlefield v. Littlefield,* Me., 292 A.2d 204 (1972). However, we are satisfied no injustice will result because the order of dismissal did not specify that it was with prejudice. *"Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."* Rule 41(a)(2) M.R.Civ.P.

The entry is:

Appeal sustained;

Remanded with instructions to enter judgment for appellant on its claim.

McKUSICK, C. J., and DELAHANTY, J., did not sit.