Charles R. Rubin, J.
Plaintiffs, licensed real estate brokers, bring this action to enjoin the Secretary of the State of New York from enforcing the July 8, 1971 order prohibiting, until further notice, solicitation of listings of property for sale or purchase, in the areas known as East Flatbush-Crown Heights in Brooklyn and Cambria Heights-Laurelton in Queens, New York City.
The order prohibits licensed real estate brokers and salesmen, and they are ordered to cease and desist, ‘ ‘ from soliciting (listings of properties for sale or purchase) in any manner whatsoever including but not limited to letters, post cards, telephone calls, door to door, window signs, bill boards, advertisements by hand bills or news publications in the area in Brooklyn, New York known as East Flatbush-Crown Heights [bounded by *300 designated Avenues] and in the area of ¡Queens, New York known as Cambria Heights-Laurelton [bounded by designated Avenhes].” Solicitation is prohibited until further notice, and violation of the order subjects the licensee to section 441-c of the Real Property Law penalties.
Claimed authority to issue the order rests on art. 12-A of the Real Property Law that authorizes the Secretary of State to regulate persons engaged in the real estate business and .section 91 of the Executive Law that permits him “ Subject to and in conformity .with the provisions of the constitution and laws of the state [to] adopt and promulgate such rules which shall regulate and control the exercise of the powers of the department of state.”
Plaintiffs object that the order (A) is unconstitutional in that it (1) violates Fifth Amendment due process; (2) is vague; (3) overbroad; and ;(4) violates Fourteenth Amendment due process by prohibiting plaintiffs from exercising their lawful purpose; (B) the Secretary of State lacks authority either under section 441-c of the Real Property Law, or section 91 of the Executive Law, to issue a blanket nonsolicitation order; and (C) section 441-c applies only to specific charges against licensed individuals and not to blanket orders.
The history of the facts leading to the order reveals that in 1970-1971 the Secretary of State received some 8,000 statements, from homeowners in the .Crown Heights-East Flatbush area indicating that they do not wish to be solicited by licensed brokers or salesmen to list their homes with them for sale, in addition to complaints from homeowners by phone and in person objecting to that practice. As a result public hearings on the problem were held on June 30,1971 in the office of the Secretary of State and continued in the evening at Tilden High School. Notice of the meeting was sent by letter to 30,000 homeowners and to every licensed broker in Brooklyn and Queens. While plaintiff Robert Gr. Bruckner acknowledges that he received notice of the hearing, plaintiff Johnnie L. Thompson denies receiving notice, probably because he was not then a licensed broker. Interested parties were given an opportunity to be heard.
As a result of the hearing and other considerations the Secretary of .State found that homeowners in the area were being unduly harassed by excessive solicitation and therefore issued the July 8 nonsolicitation order.
At the time of the hearing, and for some time before that, brokers were soliciting homeowners by mail, signs on buildings, *301 door-to-door canvass, newspaper advertisements and telephone calls. Before the July 8 order the Secretary of State had instituted ‘ ‘ cease and desist ’ ’ procedure aimed at curbing solicitation; that proved unsuccessful. Under that procedure homeowners could ask the Secretary of State to add their names to a list (of those who do not wish to be solicited) circulated among all licensed brokers. Over 8,000 such ‘ ‘ cease and desist ’ ’ requests were received. Violations could subject soliciting brokers to section 441-c penalties.
The order under consideration does not prohibit brokers from engaging in their business — only solicitation in the proscribed area is prohibited. Although they are no longer allowed to solicit area homeowners, brokers may however offer listings by signs in their windows, or by advertisements, and may accept properties for listing when the homeowner initiates the request, and for that purpose may legitimately seek purchasers by any advertising means. No showing is made that the order has been implemented in any other way; nor have plaintiffs been charged with violating the order.
A(l) The order is not violative of Fifth Amendment due process rights.
Sufficient notice of the public hearings was given to all interested parties. Differences of opinion regarding distribution of the notice of public hearings and the findings of the Secretary of State are insufficient to invalidate the resultant order. There is enough evidence in the record to conclude that the order seeks to resolve a serious challenge to the stability and tranquility of the community. That the testimony received at the public hearings was unsworn, that all potentially affected persons did not receive personal notice, that all interested persons did not have an opportunity to speak at the public hearings, that those who did speak were not held to equally specified time limits and that audience response to certain speakers was unfavorable, is not ia denial of due process. Administrative, public-meeting type hearings do not involve constitutional questions (Matter of O’Brien v. Commissioner of Educ., 4 N Y 2d 140). Licensees need not be granted trial .type hearings whenever the Secretary of State finds it necessary to issue a general order affecting all licensees. Due process does not require him to hold a trial type hearing when, as in this case, he acts legislatively to hear views for the purpose of developing new law and policy.
A (2) The order is not unconstitutionally vague.
The language is clear and the prohibited activities, plainly *302 listed. A statute that lacks those “ ascertainable standards of guilt ’ ’ that fail to give ‘ ‘ a person of ordinary intelligence fair notice that his contemplated conduct is forbidden ’ ’ is void for vagueness (United States v. Harriss, 347 U. S. 612, 617; Papachristou v. City of Jacksonville, 405 U. S. 156, 165). Testing the order by that rule it passes. It prohibits “ soliciting * * * in any manner whatsoever ’ ’, limiting restricted areas and prohibited activities with specificity. Soliciting for the purpose of listing properties for sale and for purchasing them is prohibited. The order gives fair notice to any person of ordinary intelligence what conduct is forbidden. He is told that he may neither solicit properties for sale nor may he solicit them for purchase. The order is not to be faulted for vagueness.
A(3) The order is not unconstitutionally overbroad.
The argument is made that the right to engage in legitimate business practices, including the right to solicit customers, is protected ¡by Fifth and Fourteenth due process Amendments. It is urged that in previous orders and regulations, as well as in title .0 specifications of the Administrative Code of the City of New York dealing with the New York City commission of human rights, only excessive or illegal solicitation is prohibited — not all solicitations per se. Under that procedure brokers are not prohibited from soliciting unless they are first charged, and then found guilty, with violating the order or regulation. That procedure, argue plaintiffs, decides illegal solicitation after' the fact and not, as in this order, before the fact, thereby making this order overbroad. They also urge that it is overbroad because it completely prohibits legitimate .business endeavors, denying plaintiffs ’ fundamental rights protected by the Constitution.
The geographical .boundaries, encompassed by the order are reasonable. The restricted area is clearly delineated, including within its boundaries thousands of homeowners who have requested that they not be solicited; and in which defendant’s earlier effort to curb solicitation failed. While the restricted area by the very nature of the problem does not lend itself to precise definition, it is sufficient if, in the main, its boundaries substantially encompass the problem area.
Having determined that the geographic boundaries are not overly broad, we reach the question whether the operative effect of the order is. An order is overbroad if it does not reasonably relate to the findings on which it rests, or ¡to put it another way, if its operative effect exceeds the evil to be corrected. For *303 we may not impose the evil of an overbroad order under the remedial guise of curing another evil.
While the operative effect of the order should be limited by the condemned practice it must however be broad enough to discourage evasion by some slight change in the practice to escape the order’s effect. “No soliciting * * * in any manner ” may be justified by past practices of pernicious solicitation. While solicitation of properties for listing or purchase is permissible and regarded as a legitimate activity, if perniciously practiced so as to be inimical to public interest, it may be curtailed. To what extent a gainful occupation may be permitted and pursued in the streets and to what extent it may be adjudged in derogation of the public right of the user involves legislative judgment (Gold Sound v. City of New York, 195 Misc. 291; Railway Express v. New York, 336 U. S. 106). The order permits plaintiffs to continue their business activity including solicitation anywhere else (other than in the restricted area) in the State of New. York; nor are they prohibited from doing business within the restricted area — only solicitation is prohibited.
In Bedford-Stuyvesant Real Estate Bd. v. Lomenzo (39 A D 2d 742) a special proceeding to enjoin the Secretary of State from issuing blanket nonsolicitation orders “ prohibiting solicitation by licensed real estate brokers and their salesmen, for listing of homes for sale in two certain areas in Brooklyn, New York” (supra p. 742) the court pointedly said, when affirming the judgment of the court below dismissing the petition on the ground of lack of standing to sue: “ We have not reached the merits, but had we done so, we would have affirmed ” (supra, p. 742).
This court concludes that the order is not overbroad, that it is properly designed to cure the evil rampant in the community, that it does not abrogate authority to the secretary beyond that possessed by him or reasonably necessary .to effectively deal with the problem, and that it properly prohibits a pernicious practice and is reasonably limited in area and function. A (4) The order does not violate Fourteenth Amendment due process.
Due process requires that the order be neither unreasonable nor arbitrary and that it be reasonably related to some manifest evil (Triolo v. Johnson, 65 Misc 2d 424).
Having determined that the order meets those standards, it is a proper exercise of administrative responsibility. It alerts licensed personnel that solicitation of homeowners in the pro *304 scribed area constitutes conduct punishable under section 441-c of the Real Property Law. By so disciplining licensed personnel, the secretary exercises regulatory powers with which he is invested (Kamper v. Department of State of State of N. Y., 26 A D 2d 697, affd. 22 N Y 2d 690). Accused brokers and salesmen must first be charged with, and found guilty of, violating the nonsolicitation order before section 441-c penalties may be imposed (Matter of Old Republic Life Ins. Co. v. Wikler, 9 N Y 2d 524).
Prohibiting pervasive solicitation inimical to public interest does not invade an area protected by the Fourteenth Amendment, Licensed real estate brokers and, salesmen have no absolute right of solicitation. The order does not prohibit them from engaging in the real estate- business; it only prohibits soliciting in the proscribed area. Subject to this reasonable limitation they are free to pursue their business activities.
B. The Secretary of State is empowered by section 441-c of art. 12-A of the Real Property Law and section 91 of the Executive Law, to issue the order.
Article 12-A of the Real Property Law empowers the Secretary of State to regulate persons engaged in the real estate business. (Bedford-Stuyvesant v. Lomenzo, 39 A D 2d 742, supra.) Recognizing that the real estate brokerage business, involving the buying and selling of homes for profit, imposes great responsibility, the Legislature designed article 12-A to protect the public against inept, inexperienced or unethical persons who might perpetuate frauds on an unsuspecting public, by establishing protective and qualifying standards (Dodge v. Richmond, 5 A D 2d 593, 595). Article 12-A is constitutional (Roman v. Lobe, 243 N. Y. 51).
Section 91 of the Executive Law permits the Secretary of State to adopt rules and regulations necessary to the proper exercise of article 12-A powers (Bishop Estates v. Murphy, 41 Misc 2d 719). The challenged order was promulgated under the power vested in the secretary by section 91 to control article 12-A prohibited practices. Having determined that it is in the public interest and in furtherance of public policy to prohibit solicitation in proscribed areas, the secretary properly issued the order to end abuses then rampant. Violation of that order could properly be regarded as evidence of untrustworthiness under section-44l-e, subjecting offenders to punishment.
C. The order is not repugnant to section 441-c of the Real Property Law.
*305 The secretary may revoke or suspend licenses of real estate brokers or salesmen of “ demonstrated untrustworthiness or incompetency ” (Real Property Law, § 441-c, subd. 1). The order tells licensed personnel that they may not solicit in proscribed areas and that violation of its mandate subjects them to section 441-c penalties. It is not self-operative. While untrustworthy brokers and salesmen may be disciplined, the order per se imposes none. Instead, it warns them that if they violate the order they are subject to section 441-c discipline. It creates no new penalties; it simply defines prohibited conduct.
Finding the order constitutional, and that the Secretary of State possesses authority to issue it, we do not reach the question whether plaintiffs are aggrieved parties with standing to sue.
Defendant is awarded judgment dismissing the complaint.