*1030 OPINION OF THE COURT
Jack Turret, J.
Pursuant to CPLR 2001, this court’s prior decision of April 11, 1986 is amended to read as follows:
The instant petition was brought for a declaratory judgment specifying the rights and legal relationships of the petitioner with respect to several nonsolicitation orders issued by the Secretary of State, for further consequential relief pursuant to CPLR 3017 (b), and for various relief pursuant to CPLR article 78.
Briefly stated, the facts giving rise to the commencement of the instant petition are as follows:
Petitioner, Candida Campagna, is a real estate broker and maintains an office for the transaction of business at 820 Swinton Avenue, Bronx, New York, which is also her residence. Prior to the establishment of her current office, petitioner maintained an office in Dutchess County, Stormville, New York. In accordance with 19 NYCRR 175.20 (d), petitioner applied to the Department of State for approval to relocate her office to Swinton Avenue, Bronx, New York. This Bronx location is subject to a geographically limited nonsolicitation order issued by the Secretary of State on September 6, 1977. Petitioner’s application for relocation was granted on condition that she agree not to engage in the listing or sale of one-, two-, or three-family homes.
The instant application is directed not only to the nonsolicitation order covering the location wherein petitioner maintains her office, but encompasses the nonsolicitation orders dated July 8, 1971, October 31, 1975, and December 20, 1973, which span various areas of Brooklyn and Queens, respectively.
The nonsolicitation orders challenged herein were assertedly promulgated by the Secretary of State in an effort to forestall the pernicious practice of "blockbusting”. Under Executive Law § 296 (3-b), it is unlawful "for any real estate broker * * * to represent that a change [has, may, or will] occur in the composition [of a neighborhood or block] with respect to race, creed, color [and/or] national origin * * * [which change will result in] undesirable consequences in the block [where such broker’s purpose in making such representation is to induce a real estate transaction from which such broker] * * * 'may benefit financially’ ”. To further the implementation of State policy with respect to neighborhood stabil *1031 ity and composition, the Secretary of State, acting within the statutory authority to regulate the licensing and practice of real estate brokers, promulgated the instant contested nonsolicitation orders. The authority to issue same is assertedly derived from Executive Law §91 which provides that the Secretary of State "may adopt and promulgate such rules which shall regulate and control the exercise of the powers of the department of state”, and Real Property Law article 12-A which denominates the statutory scheme whereby the Department of State oversees the licensing of real estate brokers.
Article 12-A was enacted "to protect dealers in real estate from unlicensed persons who acted as brokers, and to protect the public from inept, inexperienced or dishonest persons who might perpetrate or aid in the perpetration of frauds upon it, and to establish protective or qualifying standards to that end.” (Dodge v Richmond, 5 AD2d 593, 595 [1st Dept 1958].) Consequently, it has been held that Executive Law § 91 "permits the Secretary of State to adopt rules and regulations necessary to the proper exercise of [Real Property Law] article 12-A powers”. (Thompson v Lomenzo, 78 Misc 2d 298, 304, affd 48 AD2d 869.) Although the Second Department has held in Thompson v Lomenzo (supra) and Heinemann Agency v Ghezzi (49 AD2d 747 [2d Dept 1975]) that the Secretary of State has the authority, via statutory interpretation, to promulgate and implement the nonsolicitation orders, same is not without limitation. For example, in Heinemann Agency (supra), the appellate court affirmed the lower court’s determination of the validity of the nonsolicitation order without opinion. In Thompson v Lomenzo (supra) the Appellate Division in affirming the lower court’s enforcement of a nonsolicitation order covering listings of properties for purchase or sale in the East Flatbush-Crown Heights area in Brooklyn, specifically interpreted the order to mean "that a willing seller within the area named may list his real property with any licensed broker for sale to any bona fide purchaser” (48 AD2d 869-870, supra; emphasis added), and further interpreted the provision in the order "that all solicitation be and is hereby prohibited until further notice” to mean "that the prohibition shall be in effect for such reasonable time as will bring about a successful abatement of the 'block busting’ practice and tactics and is without prejudice to an application by plaintiffs to the Secretary of State to rescind his order upon a showing that the conditions complained of no longer exist.” (48 AD2d, at p 870.)
The Court of Appeals had the validity of nonsolicitation *1032 orders before it in Matter of Hawley v Cuomo (46 NY2d 990). The court did not pass upon the constitutional infirmities alleged in the instant case.
The nonsolicitation orders in question were promulgated by the Secretary of State subsequent to the conduct of a public hearing at which testimony was recorded and an opportunity to be heard was afforded the community as well as resident brokers. The factors giving rise to the issuance of the orders included the fact that: the geographical areas at issue were concededly racially transitional neighborhoods; the quantum of brokers had increased in these areas and personal solicitations by way of telephone calls, postcards, and door-to-door solicitations rose dramatically; and community residents were induced into selling their homes fearing that the transition resulting in a change in their neighborhood composition would result in the devaluation of their property.
The Secretary contends that the regulatory scheme which bars solicitation and limits the number of new brokers entering the market in a racially transitional area curbs community unrest and fears and promotes stability in these areas.
The court is well satisfied that the Secretary has the authority to issue appropriate regulations deemed necessary to implement the legislative intent for which article 12-A was enacted.
Petitioner raises issues with respect to the promulgation and content of nonsolicitation orders. It is claimed that the proper standard of review as enunciated by the Court of Appeals in Matter of Hawley v Cuomo (46 NY2d, at 991) is "whether the action of the administrative board * * * 'was affected by an error of law or was arbitrary and capricious or an abuse of discretion’ ”. (See also, Ostrer v Schenck, 41 NY2d 782, 786.)
The nonsolicitation orders are geographically limited. The prohibitions embodied in the orders of July 8, 1971, December 20, 1973, October 31, 1975, and September 6, 1977 restrict real estate brokers from soliciting listings of properties for sale and from soliciting properties to be purchased by the brokers themselves. Solicitation is barred "in any manner whatsoever including but not limited to letters, postcards, telephone calls, door-to-door, window signs, billboards, advertisements by handbills or news publications.” The orders further state that "all solicitation * * * is * * * prohibited until further notice.” The nonsolicitation orders codified by 19 NYCRR part 178 are *1033 almost identical except that pursuant to section 178.4 (b) the solicitation prohibition is limited to residential dwelling units of up to three, and advertisements are permitted in newspapers of general circulation.
The affidavit of Patrick J. Cea, special counsel to the Division of Licensing Services of the Department of State states at page 9 that the "order [does] not prohibit homeowners from requesting brokers to list their homes for sale or brokers from using all legal methods of communication to list such homes for sale.” He further states that "Petitioner cannot list or engage in the sale of one, two or three family homes from his location.” The "Secretary’s memorandum of law in opposition to the petition [hereinafter Secretary’s Memorandum]” states at page 20 that: "A broker may solicit a person who has already placed his property on the market. He may also place a sign calling for listings in the window of his office.”
Petitioner is excluded from engaging in these activities. The exclusion of petitioner is based on the Secretary’s determination that "the buyer and seller of small residential homes are adequately serviced by existing real estate brokers to engage in the sale of small residential homes if a need occurs.” (Secretary’s Memorandum, at 22.) The Secretary justifies the foregoing by stating that the "classification in the regulation has a rational basis. The regulation restricts brokers located in specifically designated areas from listing one, two and three-family homes for sale.” (Id., at 31.)
The United States Supreme Court recently considered the question of the constitutionality of prohibiting the conduct of solicitation by licensed professionals, in a case involving the solicitation by attorneys. The high court in Ohralik v Ohio State Bar Assn. (436 US 447, 460 [1978]) stated that the "State bears a special responsibility for maintaining standards among members of the licensed professions.” Solicitation, said the court: "is inherently conducive to overreaching and other forms of misconduct * * * may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection * * * [and as a result thereof] the State has a strong interest in adopting and enforcing rules of conduct designed to protect the public from harmful solicitation by [professionals] whom it has licensed” (supra, at pp 464, 457). In addition, the court reiterated the well-settled doctrine that commercial speech, that is: speech proposing a commercial transaction, as opposed to other varieties of speech, is afforded less extensive 1st Amendment *1034 protection where it is not false or deceptive and does not concern unlawful activities. (See also, Zauderer v Office of Disciplinary Counsel, 471 US —, 105 S Ct 2265, 85 L ed 2d 652 [1985].) It is therefore clear that in the case of a licensed professional, such individual’s 1st Amendment right of freedom of speech may be curtailed where the State endeavors to regulate conduct which by its very nature is commercial, and in which the State has an interest — commercial speech having been held not to be unconditionally protected by the 1st Amendment.
The asserted State interest in barring broker solicitation is to promote stable, integrated housing and to eliminate the "improper and excessive solicitation and harassment of homeowners [which generates] fear and panic * * * [is] conducive to blockbusting * * * [and promotes] the exploitation of minority groups in the [designated areas]” (see, nonsolicitation order, July 8, 1971).
Under the standard of review as enunciated in Matter of Hawley v Cuomo (supra) and Ostrer v Schenck (supra) this court finds as a matter of law that the enactment of that aspect of the orders which seek to prohibit the act of solicitation: (1) was not affected by an error of law as the Secretary is empowered with the authority to regulate the conduct and licensing of real estate brokers (see, Real Property Law art 12-A; Executive Law § 91; Thompson v Lomenzo, supra; Ohralik v Ohio State Bar Assn., supra); (2) was not arbitrary and capricious as evidenced by the investigation undertaken prior to the orders’ promulgation, the conducting of public hearings, and the effort made to devise an appropriate remedy; and (3) did not constitute an abuse of discretion based on the foregoing reasons.
This court determines that the orders do not violate the Constitution and are valid insofar as the conduct of solicitation is regulated.
The nonsolicitation orders regulate the content of speech which is associated with the conduct of solicitation. Brokers may not solicit listings of one-, two-, or three-family residential properties by way of letters, postcards, telephone calls, door-to-door canvassing, window signs, billboards, advertisement by handbills or news publications, except publications of general circulation. In addition, the interpretation given to these restrictions by the Secretary through the preparation and distribution of the questions and answers provides: (1) *1035 that signs soliciting listings when placed in the broker’s office window are acceptable even though same is prohibited: (a) by the specific wording of the orders; (b) in 19 NYCRR 178.2, and (c) the papers submitted in opposition; (2) that a "sold” sign placed on property is not permitted; and (3) billboard ads calling for listings are not permissible.
At this juncture, a distinction must be drawn between direct solicitation — conduct which the United States Supreme Court has held may constitutionally be prohibited — and indirect solicitation. Sifting through the list of activities prohibited by the orders, door-to-door canvassing and telephone calls would qualify as direct and active solicitation. The atmosphere under which such activities occur does not provide the time for reflection or distance by the solicitee which the court felt was a particularly relevant factor in its decision to regulate solicitation. Such forms of "speech” are permissibly prohibited under Ohralik (supra) and its progeny. On the other hand, however, letters, postcards, window signs, billboards, and local news publications are more passive and indirect forms of solicitation, and as such more easily labeled speech and separable from conduct.
Letters, postcards, etc., as same would be utilized by brokers, constitute commercial speech, "that is, expression related solely to the economic interests of the speaker and its audience.” (Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557, 561 [1980].)
It is the ruling of this court that the restrictions imposed by orders of the Secretary of State in this case do not violate the US Constitution 1st Amendment. The petitioner’s reliance on Central Hudson Gas & Elec. Corp. v Public Serv. Commn. (447 US 557, supra), and other cases restricting commercial speech is misplaced. In this case, the petitioner indicates advertising through office window signs, advertisements in radio television, yellow pages and newspapers of general circulation (permissible under the orders in question) "are ineffectual ways of obtaining listings and sellers of property”. This petitioner seeks to personally solicit by immediate contact and direct solicitation. In Ohralik v Ohio State Bar Assn. (436 US 447 [1978], supra), the Supreme Court rejected in person solicitation by lawyer and found substantial differences between face-to-face solicitation and advertising. There was no requirement that an emergency be shown in Ohralik (supra) before the court repealed a prophylactic rule banning solicitation as was ordered by the Secretary of State in the instant *1036 case. Proof of emergency is not required and the products cases relied on by petitioner have been distinguished where the Supreme Court has had occasion to rule in respect of the restriction of commercial speech where services are involved.
19 NYCRR 175.20 serves a significant government interest. It addresses the problems of excessive solicitation and "blockbusting”. These problems are in direct contravention of public policy and the law. The power to protect the public against these ills has been delegated to the Secretary of State. To prevent real estate brokers from employing these improper business practices, broad discretion must be afforded the Secretary. There has been no showing the Secretary’s actions are applied arbitrarily. Petitioner has not been denied a livelihood by the Secretary’s actions. There has been no showing the Secretary’s actions, based on fact, are not reasonably and rationally designed to implement public policy.
Insofar as the petition seeks judgment pursuant to CPLR 3001 and a judicial determination of the rights of the parties, this court finds the nonsolicitation orders of the Secretary of State challenged herein are lawful. They are not arbitrary, capricious or unconstitutional. The article 78 proceeding is hereby dismissed.