CUSHMAN & WAKEFIELD, INC., Appellant, v. DOLLAR LAND CORPORATION LIMITED (U. S.) et al., Respondents.

First Department, May 16, 1974.

*Meyer K. Sanoff* of counsel (*Robert M. Calica* with him on the brief; *Carb, Luria, Glassner, Cook & Kufeld*), for appellant.

*Lawrence W. Boes* of counsel (*Dennis C. Cronin* with him on the brief; *Reavis & McGrath,* attorneys), for respondents.

CAPOZZOLI, J.  Plaintiff, Cushman & Wakefield, Inc., a licensed real estate broker, sues to recover commissions allegedly due, pursuant to the terms of a letter agreement between the parties, dated September 13, 1968, which was given at the time of the execution of a contract of sale for real properties owned by defendants.  The contract of sale, which bears the same date, was entered into between defendants sellers and Brook Realty Co. Inc., as purchaser.  It covers three parcels, the Cross County

Shopping Center in Yonkers, N. Y., the Parkdale Shopping Center in Corpus Christi, Texas, and the Citizens' National Bank Building in Orlando, Florida. Paragraph 21 of the contract of sale provides for payment to plaintiff of brokerage commissions " in accordance with a separate letter agreement ". That letter agreement makes reference to the contract of sale and provides as follows: " We agree to pay to you brokerage commissions at Real Estate Board rates, as follows: two-thirds at the closing and the balance of one-third within three years from the date of closing."

The commissions sued for, when calculated on this basis, amount to $290,650.33, which is the amount sued for herein.

Relevant matters which are involved in this action were also considered in an earlier action in the Supreme Court, Westchester County, where the litigants now before the court and others were parties. In that action there were certain adjudications which bear greatly on the issues involved in this action and which are decisive of the issues presented in the case at bar.

The Westchester action was brought by dissident stockholders of Dollar Land Holding Limited (Dollar, England, an English corporation). Dollar England owned the majority of shares of Dollar Land Corporation Limited (Dollar, Canada). Dollar Canada owned all the shares of County Dollar (defendant here), which in turn owned all of the shares of Dollar, United States, also a defendant here.

The dissident shareholders sought, in the Westchester action, to rescind the Brook agreement and enjoin conveyance of properties thereunder. The four Dollar companies, Brook, plaintiff here and the former directors of the Dollar companies were all defendants in the Westchester action. The dissident shareholders in that action claimed that the acts of the then directors of the Dollar companies, in causing the defendants to agree to the Brook agreement, were *ultra vires* and that the agreement was induced because of the collusion of the aforesaid directors with Brook and the plaintiff here.

Title closing was scheduled for October 4, 1968, as provided in the Brook agreement. However, the dissident shareholders obtained a stay and preliminary injunction in the Westchester action, thereby preventing the passage of title.

Subsequent to the October 4 date, the dissident shareholders, plaintiffs in the Westchester action, gained control of the corporate management of the Dollar companies and elected a new board of directors. This board of directors decided to cancel the contract of sale and formally repudiated it.

The Westchester action was tried before the court, without a jury, and resulted in a dismissal of the complaint, with prejudice. The court found that the Brook agreement was a valid, subsisting and enforceable contract, binding upon all of the parties, that the same was not voidable by reason of any claim of *ultra vires* or collusion, and further, that there was no fraud or waste of corporate assets in connection with same. The court also found that a formal tender of performance on October 4, 1968, the date set for the closing, was made by the defendant, Brook, and that the tender was in all respects valid and bona fide. It further found that title would have closed except for the existence of the injunction.

On appeal to the Appellate Division, Second Department, from the judgment rendered in the Westchester action, the Appellate Division concluded that Brook was ready, willing and able to perform (37 A D 2d 193, affd. 31 N Y 2d 938). At page 203 of the Appellate Division report the court said: "We find that the directors of the Dollar companies acted in good faith in determining to bring about an orderly liquidation of the Dollar assets, that the sale price was reasonable in the circumstances, and that the directors perpetrated no fraud on the corporations in entering into the September 13 contract * * * Brook, a purchaser, without notice, is entitled to specific performance".

Where a brokerage agreement makes no mention of terms or conditions affecting broker's right to commission, the broker earns his commission upon the signing of the contract. (*Wagner v. Derecktor,* 306 N. Y. 386.) At page 390 of the court's opinion there is the following: "Although in the conventional brokerage transaction the broker does not assume the risk of performance, and has earned his commission when he procures a purchaser ready, able and willing to buy, the parties *may* agree that payment is to be conditioned upon complete performance of the contract which the broker procures".

Therefore, parties are free to add whatever conditions they wish, such as no commission unless sale actually is completed, "however such an agreement will not absolve the seller of the obligation of paying a commission where the sale fails of completion through the seller's own fault and, therefore, if * * * plaintiff can show that it was through defendants' fault that the contract of sale was never consummated, he must prevail." (*Levy v. Lacey,* 22 N Y 2d 271, 276.)

In *Globus Realty Corp.* v. *Fleetwood Terrace,* 275 App. Div. 34, affd. 301 N. Y. 783) in the Appellate Division report the court

said: " To earn a commission it was incumbent on plaintiff to show that it had been hired by defendant as a broker and had produced a purchaser able and willing to enter into a contract for the purchase of the property upon all essential terms satisfactory to the seller."

In the action at bar the defendants, in effect, seek to relitigate issues which were determined in the Westchester action. They contend that no commission is due to the plaintiff because no closing has taken place, as required by the brokerage letter of agreement. It is abundantly clear that title failed to close because of the sellers' refusal to go through with the contract. They were the ones at fault and, under those circumstances, the sellers may not use "the defense of nonperformance of a condition precedent under the well-established rule that one may not take advantage of a condition precedent, the performance of which he himself has rendered impossible ". (*Stern* v. *Gepo Realty Corp.*, 289 N. Y. 274, 277.)

In the case at bar the complaint satisfies the requirements for pleading a cause of action for a broker's commission. Special Term denied plaintiff's motion for summary judgment because it was of the opinion that issues of fact were presented which would require a plenary hearing. It identified one such issue as " whether or not defendants' acts prevented the real estate closing from taking place ". As to this issue the proof in the record is clear that defendants' acts did prevent the closing from taking place. As has been stated above, not only was there a stay and preliminary injunction granted in the Westchester action preventing the title closing, but, after the minority stockholders gained control of the management of the defendant companies, the latter formally repudiated the contract.

The defendants raise other issues in this case which they claim require a trial. They refer to an alleged conflict of interest between the plaintiff and the defendants, collusion between the former directors of the defendants and the plaintiff and an alleged violation of fiduciary duties claimed to be owed by the plaintiff to the defendants. Suffice it to say that these issues were also passed upon in the Westchester action and determined adversely to the defendants.

We are satisfied that the doctrine of collateral estoppel is properly invoked in this case. (*Schwartz* v. *Public Administrator of County of Bronx*, 24 N Y 2d 65.) At page 71 of the cited case the court said: " New York law has now reached the point where there are but two necessary requirements for the invoca-

tion of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.''

An additional argument is advanced by the defendants to the effect that this action is premature. They base this on the language of a stipulation of discontinuance in the Westchester action, whereby plaintiff was dropped as a defendant therein. Defendants claim that the stipulation impliedly precludes plaintiff from prosecuting this action for commissions until after a final determination of the Westchester action. They argue that a final determination has not yet been made in that action because a further hearing was ordered by that court to determine whether to award Brook specific performance or damages in lieu thereof. This contention is without merit because Brook's right to relief is judicially established, it is only the nature of the relief which is left open, viz: specific performance or damages.

Since the defendants placed some reliance on the language of the stipulation, it is noteworthy that, amongst other things, the stipulation provides as follows: '' 3. Notwithstanding the discontinuance referred to herein, any final judgment in this action and any determinations of fact upon which such final judgment rests shall have the same effect of *res judiciata* and/or collateral estoppel, to the extent of applicable law, as between and among all of the parties plaintiff, the defendant, CUSHMAN & WAKEFIELD, INC., and the defendants, DOLLAR LAND HOLDINGS LIMITED, DOLLAR LAND CORPORATION LIMITED, COUNTY DOLLAR CORPORATION, and DOLLAR LAND CORPORATION LIMITED (U.S.), as if the defendant, CUSHMAN & WAKEFIELD, INC., were still a party to this action at the time of such final judgment.'' Obviously, the parties realized that the determination of the issues in the Westchester action could be used as *res judicata* or collateral estoppel in the action at bar insofar as the same issues are concerned. Of course, they did no more than to state the existing law and, even without this language in the stipulation, the law would dictate the result reached by this court.

For the reasons above stated, the order so far as appealed from, denying plaintiff's motion for summary judgment, should be reversed on the law and summary judgment granted to plaintiff for the relief demanded in the complaint, with costs and disbursements. Settle order.

MARKEWICH, J. P., MURPHY and STEUER, JJ., concur.

Order, Supreme Court, New York County, entered on April 12, 1973, so far as appealed from, unanimously reversed, on the law, and summary judgment granted to plaintiff for the relief demanded in the complaint. Appellant shall recover of respondents $60 costs and disbursements of this appeal.

Settle order on notice.