■ Wm. A. White & Sons, Respondent, v La Touraine-Bickford's Foods, Inc., Appellant.—Judgment, Supreme Court, New York County, entered October 10, 1974, after jury trial, reversed, on the law, and the complaint dismissed, with $60 costs and disbursements to appellant. This suit for brokerage commissions claimed to have been earned on an aborted sale of real property went to the jury on four questions seeking answers constituting a special verdict. The jury answered that plaintiff-respondent had procured a purchaser for defendant-appellant's property "ready, willing and able" to do so "upon all of the essential terms satisfactory to the seller"; that the agreement of the parties was that the "commission would be deemed earned" when "agreement was reached * * * upon all the essential terms of the sale" with payment "to be deferred until the closing of title"; that the parties did *not* agree that plaintiff was not to receive commissions "unless the sale was consummated and title closed with the buyer procured by" plaintiff; and that the plaintiff seller breached the agreement for the sale of the property to plaintiff's buyer, making impossible "consummation of the transaction," thereby depriving plaintiff of the commission. Judgment was rendered accordingly. The case should not have gone to the jury, for no reasonable view of the evidence could have sustained the special verdict. The evidence was that brokers and consultants retained by defendant mailed a brochure and offering letter to over a score of local real estate brokers, covering projected sale of the subject property. On May 13, 1971 such a letter was sent by one Graham, a broker for defendant, to plaintiff "to confirm" an "understanding" that the writer, as agent for defendant, was working in co-operation with plaintiff "or any other broker in attempting to sell" the subject property, stating an offering figure and, further, that, "if a sale is consummated by yourself a commission of $75,000 will be paid." One week later, plaintiff's officer wrote to another of plaintiff's brokers stating that plaintiff had been authorized the day before by "a substantial investing customer" to submit a stated offer for the property, that offer being "subject to a commission payable to [plaintiff] in the amount of $75,000, payable on the closing of title." There ensued discussion of terms, and a new, somewhat reduced offer. Defendant's board of directors voted, not unanimously, to accept the offer, and authorized its officers to enter into a contract on the terms offered. The officers did not enter into such a

contract, even though a date was set for closing. Meanwhile, another broker brought in a customer with a higher offer, not matched by plaintiff's customer, and the sale to the newcomer was consummated. Plaintiff claimed that it had earned its commission by producing its prospective customer, this despite the language above quoted that nothing would be payable until and if a sale was consummated. It was not for a jury to determine the meaning of the clearly expressed contract spelled out in the language used by the agents of both parties in the quoted letters, but for the court to determine the legal consequence of the words employed. The words "closing of title" employed by *plaintiff* require no explanation. The word "consummated" used by defendant's agent is simple and clear in meaning. "To end; to finish by completing or fulfilling; to perfect; to bring or carry to the utmost point or degree." (Webster's New 20th Century Unabridged.) To the same effect (Merriam-Webster Third International Unabridged). "To finish by completing what was intended; to bring or carry to utmost point or degree; carry or bring to completion; finish; perfect; fulfill; achieve." (Black's Law Dictionary [4th ed.].) To the same effect by paraphrase, Corpus Juris Secundum, Vol. 16A, p. 1246. The facts before us are incapable of providing an inference of either consummation or closing of title. Defendant is clearly without liability to pay in this case in the absence of consummation of the deal by, at the very least, a contract closing resulting in a signed enforcible agreement. Until and if such a consummation took place, defendant was free to negotiate with anyone other than plaintiff's customer. (See *Elliman & Co. v Sterling Garage,* 279 App Div 20, affd 304 NY 846; *Levy v Lacey,* 22 NY2d 271.) The complaint should have been dismissed. Concur—Stevens, P. J., Markewich, Kupferman and Capozzoli, JJ.; Nunez, J., dissents in the following memorandum: I dissent. The jury found, by answering interrogatories submitted to it without objection, (1) that plaintiff procured a purchaser for the defendant's property who was ready, willing and able to purchase the property upon all the essential terms satisfactory to the seller, (2) that the parties agreed that the commission would be deemed earned at the time agreement was reached upon all the essential terms, with payment deferred until title closing, (3) the parties did not agree that commissions would be payable only if title closed, and (4) the seller by its act (of accepting a higher offer after it had agreed upon all substantial terms tendered by plaintiff's customer) breached its agreement to sell to plaintiff's customer which made impossible the consummation, or sale to plaintiff's customer. The jury's findings were amply supported by the evidence. The seller's acceptance of the higher offer, after it had agreed to accept plaintiff's customer's offer, was the sole cause preventing the consummation of the sale and depriving plaintiff of its earned commission. Such was not the intent of the parties. The jury's verdict should be upheld. (See *Cushman & Wakefield v Dollar Land Corp.,* 44 AD2d 445; *Levy v Lacey,* 22 NY2d 271.) The judgment in plaintiff's favor should be affirmed.