OPINION OF THE COURT
Rolando T. Acosta, J.
The defendants in this breach of contract action are accused of wrongfully reneging on a contract for a broker’s commission related to the sale of their home. According to plaintiff, the defendants refused to follow through with the sale because *410 defendants’ neighbors, unhappy that defendants were about to sell their $350,000 home to a Latino male named Luis Quintanilla, threatened the defendants, persuading them not to sell. The twist in this case, however, is that the action is brought not by the principal victim of the alleged discrimination, Luis Quintanilla, but by the real estate broker, Jacob Gold Realty, Inc., which lost its claim to an $18,000 commission which otherwise would have been paid to it pursuant to their brokerage agreement with defendants had the deal not fallen through.
Plaintiff maintains that defendants’ refusal to close the deal for the aforementioned reason constituted “willful default”, entitling plaintiff to the earned, but unrealized, commission. Defendants, on the other hand, contend that they backed out of the deal not because of any neighbor’s race-based threats, but because the prospective buyer (Quintanilla) had deleted or altered certain clauses of the proposed contract relating to a mortgage contingency (requiring 25% down payment) and relating to the prospective buyer’s income and status as a “bankrupt” — alterations and/or deletions which defendants viewed as a counteroffer.
The case, tried before the court without a jury, requires the court to resolve, in addition to various factual disputes, the question of whether the defendants’ refusal to sell to Mr. Quintanilla constitutes a “willful default” sufficient to operate as a breach of the broker’s agreement.
The Alleged Breach of the Broker’s Agreement
In the absence of an agreement to the contrary, a real estate broker will be deemed to have earned its commission only when it produces a buyer who is ready, willing and able to purchase property under terms offered by the seller. (See, Lane — Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 42 [1971]; Graff v Billet, 101 AD2d 355, 356 [2d Dept 1984], affd 64 NY2d 899 [1985].) Thus, should a broker produce a financially able purchaser who attempts to alter the terms of the sale, financial or otherwise, offered by the seller, such alteration of the terms would be deemed a counteroffer and the broker would not be entitled to a commission assuming the seller refuses to accede to the new terms. (See, e.g., Mautner-Glick Corp. v Dime Sav. Bank, 232 AD2d 235 [1st Dept 1996]; Bob Howard, Inc. v Balds, 178 AD2d 740 [3d Dept 1991].)
Notwithstanding the foregoing principles, a broker’s right to receive a commission may be expressly circumscribed by agree *411 ment between the broker and seller. The receipt of a commission, for example, may be conditioned upon the actual closing of title (White & Sons v La Touraine-Bickford’s Foods, 50 AD2d 547, 548 [1st Dept 1975], affd, 40 NY2d 1039 [1976]), the actual passage of title (Graff v Billet, supra, 64 NY2d, at 901), the consummation of sale (Langfan v Walzer, 13 NY2d 171, 172 [1963]), or any other event to which the parties agree. Where the broker’s right to a commission is so conditioned and the condition precedent is not performed, the broker would not be entitled to a commission unless the agreement provides otherwise or it can be said, based upon the parties’ intent, that the seller is responsible for the failure to perform the condition. (Lane — Real Estate Dept. Store v Lawlet Corp., supra, 28 NY2d, at 43.)
Here, it is undisputed that the plaintiff broker and the defendant sellers circumscribed the broker’s right to a commission based upon a written brokerage agreement which the parties signed on July 21, 1995. In that written agreement, the parties agreed that:
“The commission due the broker herein shall be eighteen thousand Dollars ($18,000), payable as, if, and when title actually closes and the deed delivered to Louis Fernando.[1]
“Should the deed not be delivered for any reason whatsoever, except for the willful default of the Seller(s), there shall be no commission due, and this agreement shall become null and void.”
The agreement, which is entitled a “brokerage agreement”, is printed upon a Jacob Gold Realty, Inc., form/letterhead.
Although title to the subject premises concededly never “actually close [d]” and the “deed” was concededly never “delivered” to the prospective buyer, plaintiff contends that it is nonetheless entitled to a commission pursuant to the agreement because the failure to close title was due to defendants’ own “willful default”. In support of that contention, plaintiff called two witnesses, Elizabeth Lopez, the licensed real estate agent who signed the brokerage agreement, and Jacob Gold, a principal of Jacob Gold Realty, Inc., to testify regarding separate conversations they allegedly had with Stefan Sckoczylas, one of the defendants, sometime after the drawing up of the *412 contract of sale but before the complete signing thereof. Ms. Lopez testified that Stefan Sckoczylas informed her that he was not going to “finalize the deal” because one of his neighbors had threatened him, telling him that he should not “sell the house to other ethnic groups in the neighborhood.” Mr. Gold testified that Stefan Sckoczylas informed Gold that Sckoczylas could not sell the house because he was “afraid [that] the neighbors will burn his house down” since the buyer was “Hispanic” and not “Russian”.
The foregoing testimony regarding the sellers’ alleged reason for backing out of the proposed sale, if credited by the court, would, aside from amounting to unlawful discrimination against the nonparty buyer, Luis Quintanilla, clearly constitute a “willful default” on the part of the sellers had there been a contract of sale signed by the sellers and the buyer. The court finds, however, that the plaintiff broker is not entitled to a commission in this case because there was no enforceable contract of sale upon which the defendants could willfully default and because, in any event, the court credits the testimony of the defendants and not the witnesses of the plaintiff.
In Graff v Billet (supra, 101 AD2d 355, 356-357), a broker and a seller entered into a brokerage agreement virtually identical to the agreement entered into by Jacob Gold Realty, Inc., and the Sckoczylases. The agreement, like the agreement here, provided that the broker would be entitled to a commission “ ‘if and when title passes, except for willful default on the part of the seller’ ” (supra, at 355). When the seller later sold the property to someone other than the prospective purchaser produced by the broker, the broker sued the seller even though the seller never actually entered into a sales agreement with the broker’s purchaser.
The Second Department ruled that “since no deal between the prospective purchaser and the seller ever materialized in legal, written form”, such as through a “sales contract”, the seller cannot be deemed to have defaulted so as to become liable for the broker’s commission. (Graff v Billet, supra, at 356-357.) That ruling was later affirmed by the Court of Appeals, which explicitly held that the “rule” permitting a broker to recover a commission if the seller willfully defaults “applies] only if the seller and the broker’s prospective buyer had already entered a sales contract, and the seller’s ‘fault’ or ‘default’, within the meaning of the rule, would have reference solely to a breach of that sales contract.” (Graff v Billet, supra, *413 64 NY2d, at 901; see also, Corcoran Group v Morris, 107 AD2d 622 [1st Dept 1985], affd 64 NY2d 1034 [1985].)
Thus, it is now well settled that before a broker may properly rely upon “willful default” language in a brokerage agreement such as the agreement in this case, the broker must demonstrate that a sales contract or agreement existed between the buyer and seller upon which the seller could be said to have “defaulted”. (Graff v Billet, supra, 64 NY2d, at 901.)
Like the seller and prospective buyer in Graff (supra), the sellers and Mr. Quintanilla in this case did not enter into an enforceable contract for the sale of the subject premises prior to the sellers’ withdrawal from the deal because, inter alia, only one of the four conceded owners of the property signed the proposed contract of sale. (See, General Obligations Law § 5-703; see also, Shui Ching Chan v Bay Ridge Park Hill Realty Co., 213 AD2d 467, 469 [2d Dept 1995]; Lilling v Slauenwhite, 145 AD2d 471, 472 [2d Dept 1988].) Because there was no enforceable contract, there could be no willful default by the defendant sellers sufficient to entitle plaintiff to a commission.[2] (Graff v Billet, supra, 64 NY2d, at 901; Corcoran Group v Morris, 64 NY2d 1034.)
Even if there were an enforceable sales contract between the sellers and the prospective buyer produced by the plaintiff broker, the court would find that the defendant sellers did not willfully default thereon. Defendant sellers testified that the prospective buyer had struck from the proposed contract a mortgage contingency clause and a clause which required the purchaser to make a representation that he had not been adjudicated a bankrupt and that he had a yearly income of at least $85,000. The purchaser’s act of striking those clauses was exceedingly important to the defendants because they did not want to tie up their property by entering into a contract with someone whom they believed, based upon their own personal experience, could not obtain a mortgage. The court fully credits the defendants’ testimony regarding those clauses inasmuch as the testimony was consistent and forthright and the witnesses appeared honest and sincere. In addition, defendants’ testimony regarding those clauses was supported by the proposed contract of sale, introduced as an exhibit, which clearly shows that the subject clauses had in fact been stricken.
*414 Although plaintiffs counsel went to great lengths to challenge the authenticity of the proposed contracts which were introduced into evidence and effectively confused the elderly, non-English-speaking defendant, Stefan Sckoczylas, regarding his delivery and receipt of those contracts, the court finds, based upon the testimony of each of the defendants in the case, that the clauses relating to a mortgage contingency, the purchaser’s yearly income and the purchaser’s status as a bankrupt, were stricken from the proposed contract after it was sent to Quintanilla’s attorney. In short, the court would credit the defendants’ testimony regarding their reason for backing out of the deal even if the court did not admit the two proposed contracts into evidence.
The court also credits, for the reasons stated above, the defendants’ testimony that neither fear nor racism was a factor in their decision to pull out of the deal.[3] Conversely, the court does not credit the plaintiffs witness’ testimony that racism/ fear was behind the Sckoczylases’ decision not «to sell to Mr. Quintanilla. That testimony appeared contrived and overly cautious, particularly that of Ms. Lopez who often appeared to be searching for the “correct” answers during her testimony. Accordingly, even if there were an enforceable sales contract between defendants and Mr. Quintanilla, defendants would not be found to have willfully defaulted thereon.
Finally, because the court fully credits the defendants’ testimony that Quintanilla struck certain important clauses from the proposed sales contract relating to his income and bankrupt status, the court finds that plaintiff clearly failed to meet its burden of showing that it had produced a buyer who was ready, willing and able to purchase the subject property. Nor, for that reason, did plaintiff meet its corollary burden of showing that the buyer was willing to purchase the property on the terms offered by the sellers. In any event, since plaintiff, like the broker in Graff, “agreed to forgo [its] commission until passage of title”, “[wjhatever preparatory work the broker did to produce a ready, willing and able buyer was irrelevant”. (Graff v Billet, 101 AD2d 355, 356, supra.)
Accordingly, because plaintiff has failed, for legal and factual reasons, to meet its burden of proving that it earned a commis *415 sion, the court renders judgment in favor of defendants. The clerk is directed to enter the judgment accordingly.

. One of plaintiffs witnesses, Elizabeth Lopez, testified that the inclusion of the name “Louis Fernando” in the agreement was a mistake and that the name should have been Luis Quintanilla. In light of the court’s ruling in this case, the court need not address the legal effect of that mistake.

. Notably, inasmuch as there was no enforceable contract of sale, the defendants’ reasons for refusing to proceed with the deal are essentially irrelevant.

. Indeed, the defendants had concededly signed, only weeks prior to pulling out of the deal, an “Offer to Purchase” agreement in which they conditionally agreed to sell the house to Mr. Quintanilla at a reduced price.