■ DONALD YOO (NEW YORK) CORPORATION, Respondent, v LASZLO N. TAUBER, M.D. AND ASSOCIATES et al., Appellants. [722 NYS2d 5] —Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered December 6, 1999, denying defendants' motion for summary judgment, unanimously reversed, on the law, without costs, the motion for summary judgment granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint. Appeal from order, same court and Justice, entered August 22, 2000, unanimously dismissed, without costs, as academic in light of the foregoing.

This is an action to recover a real estate brokerage commission. In 1997, plaintiff approached defendants concerning a client's interest in purchasing commercial property owned by defendants in Manhattan. Plaintiff presented its buyer's offer, along with a claim for a 3% brokerage commission to be paid out of the proceeds of the closing. Negotiations reduced an initial gap of $15 million to a meeting of the minds at $35,720,000. Plaintiff continually reminded defendants that a 3% brokerage commission would be expected out of the closing proceeds. On February 6, 1998, plaintiff conveyed its client's acceptance to defendants, along with a letter prepared for the latter's signature, formalizing the obligation to pay a brokerage commission of $1,070,000* out of the proceeds of the closing. A week later, on February 13, defendants confirmed in writing the purchase price and the commission ("which leaves us $34,650,000 net receipt"). However, this letter added some conditions that had to be satisfied, including the resolution of defendants' effort to remove the property from an existing real estate investment trust (REIT) portfolio. As the buyer's due-diligence study and inspection of the property continued apace, defendants sought additional extensions of time until expiration of the letter of intent they had signed with a REIT. At first, defendants anticipated this matter would be cleared up by the end of February, then by mid-April, and ultimately, on April 13, the individual defendant asked for the buyer's

---

* "3% of total sale price" should have been $1,071,600.

indulgence when he realized that the REIT letter of intent would not expire until April 23, *1999*. Fifteen days later, as the news of such an extensive delay was evidently sinking in with the buyer, the individual defendant hit plaintiff with an even bigger surprise—that a new letter of intent had just been signed with a new purchaser who had been introduced to him by a different broker. Plaintiff immediately charged that this "violate[d] our agreement that you promised to sell the property to our customer when the prior REIT's letter of intent expired." Defendants responded, through counsel, that they had never gone beyond the "conditional and indefinite" proposal advanced in their letter of February 13, which constituted "merely a statement of preliminary negotiation."

The motion court, at Commercial Part, found material questions of fact as to whether defendants' letter of February 13 was so conditional as to allow it to escape from the obligation to sell, and whether defendants had actually done anything affirmatively to prevent fulfillment of the condition. Even though this action was not brought by the prospective buyer, the court noted that a disappointed broker may nonetheless recover his commission where the vendor has prevented consummation of the transaction.

A brokerage commission may be legally conditioned upon a closing of title. In *Graff v Billet* (64 NY2d 899, *affg* 101 AD2d 355), the seminal case on this point (*see, Eastern Consol. Props. v Adelaide Realty Corp.*, 95 NY2d 785), the Court reviewed the standard brokerage agreement utilized in New York, which provides that a commission becomes due upon passage of title, except where there is "willful default" on the part of the seller. Plaintiff offers no case where such an exception has been determinative. The case before us does not even present the standard brokerage language in any of the correspondence between the parties. The seller's only acknowledgment of an obligation to pay a commission was clearly conditioned, in its letter of February 13, on the accomplishment of certain pre-contract events. In the absence of a contract, there is no *"Graff* exception" that would amount to a seller's "willful default" here (*Cimarron Realty 100 v Horner*, 114 AD2d 924).

The obligation to pay a broker's commission upon consummation of sale requires a formal act of closing (*Corcoran Group v Morris*, 107 AD2d 622, *affd* 64 NY2d 1034; *White & Sons v La Touraine-Bickford's Foods*, 50 AD2d 547, *affd* 40 NY2d 1039). On at least three occasions in early 1998, plaintiff advised defendants that its commission was, upon consummation of the sale, to be drawn from "the proceeds of the closing" or

"payable on closing," to which defendants confirmed, on February 13, that it would be paid from the sales price "at the time of settlement." Clearly, such an agreement could only have been consummated upon an actual closing (see, Hecht v Meller, 23 NY2d 301, 306; Levy v Friedman, 216 AD2d 18).

In the absence of a closing, or even of a contract representing a formal agreement on all matters under negotiation, plaintiff has failed to earn its commission, and the complaint should have been dismissed. Concur—Sullivan, P. J., Andrias, Wallach, Saxe and Friedman, JJ.