24-2500-cv
Thieriot v. Laggner

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of November, two thousand twenty-five.

PRESENT: AMALYA L. KEARSE,
DENNIS JACOBS,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*.

------------------------------------------------------------------

JUAN PABLO THIERIOT,

*Plaintiff-Appellee*,

v.                                                                          No. 24-2500-cv

WILLIAM LAGGNER,

*Defendant-Appellant*,

BILL LAGGNER,

*Defendant*.

------------------------------------------------------------------

FOR APPELLANT:                              ROBERT TULLY DUNLAP (Devin Freedman, *on the brief*), Freedman Normand Friedland LLP, Miami, FL

FOR APPELLEE:                               BENJAMIN D. BIANCO, Meister Seelig & Fein PLLC, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Jessica G. L. Clarke, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendant-Appellant William Laggner appeals from an August 19, 2024 judgment of the United States District Court for the Southern District of New York (Clarke, *J.*) granting summary judgment in favor of Plaintiff-Appellee Juan Pablo Thieriot on Thieriot's breach-of-contract claim against Laggner. "We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

## I. Validity of the Assignment

The breach-of-contract claim arose from a settlement agreement under which Laggner was obligated to pay Halsey Minor half of the first $750,000 in proceeds from the sale of certain shares of stock. Laggner argues that Thieriot was not a valid assignee of Minor's rights to the share of the proceeds under the settlement agreement because the agreement contains a clause that expressly prohibits any assignment. Under New York law, which the settlement agreement provided would govern, assignments are generally enforceable notwithstanding an anti-assignment clause, unless the clause expressly specifies that such assignments are void. *See Brettler v. Allianz Life Ins. Co. of N. Am.*, 40 N.Y.3d 450, 454 (2023). Parties who intend to prohibit assignments must use "clear language and the plainest words stating that an assignment made in contravention of the original contract is void." *Id.* (quotation marks omitted).

The anti-assignment clause in the settlement agreement does not contain any clear language voiding assignments made in violation of its terms. Section 10 of the agreement provides only that "[n]o Party shall assign, delegate or transfer to any person or entity its rights or responsibilities under this Settlement Agreement without the prior written consent of all other Parties." App'x 228.

3

It does not further provide that unconsented-to assignments are void or unenforceable. The assignment here is thus "valid, and the clause is read instead as a personal covenant not to assign that justifies only an award of damages against the assignor for breach." *Brettler*, 40 N.Y.3d at 454 (quotation marks omitted).

Urging otherwise, Laggner relies on *Fortunato v. Patten*, 147 N.Y. 277 (1895), as recently reaffirmed in *Brettler*, to argue that even if an assignment is valid between assignor and assignee, it cannot be enforced against a non-consenting party where consent is required by contract. The contractual language in *Brettler* and *Fortunato*, however, differs materially from the language in the settlement agreement here. While the contract in *Brettler* included language confirming that the original contracting party "will not be bound by unnoticed assignments," 40 N.Y.3d at 456, similar language is absent from the settlement agreement.

Laggner also invokes Section 2(g) of the settlement agreement, which states that "Minor agrees not to seek to transfer, assign, sell, or encumber said Shares, or any interests therein." App'x 223. At issue here, however, is Minor's assignment not of shares but rather the contractual right to payment contingent

4

upon Laggner's sale of shares. The District Court correctly distinguished between these separate rights.

For these reasons, we conclude that the assignment from Minor to Thieriot is valid and the anti-assignment clause in the settlement agreement does not render the assignment void or unenforceable against third parties. We therefore need not reach the issue of whether all parties provided prior written consent for the assignment.

## II.    Consummation of the Sale

The settlement agreement also provides that "Minor . . . shall only be entitled to receive any proceeds upon the consummation of a sale of the Laggner Shares." App'x 222–23. The agreement contains an express choice-of-law provision stating that it is to be governed by New York law. Laggner acknowledges that New York law governs the interpretation of the settlement agreement and does not dispute the application of the choice-of-law provision. So the question of whether a sale was consummated within the meaning of the settlement agreement is a matter of New York law. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

With that in mind, Laggner argues that Thieriot, as Minor's assignee, is not

entitled to any proceeds because Laggner's sale of shares in Uphold Ltd. to Yuan Yuan was never consummated under the settlement agreement's terms as interpreted under New York law.

Although the settlement agreement does not define the term "consummation," New York courts have long recognized that "to consummate" means to complete or bring to completion. *See, e.g.*, *Schulman v. City of New York*, 291 N.Y. 520, 522 (1943); *Wm. A. White & Sons v. La Touraine-Bickford's Foods, Inc.*, 375 N.Y.S.2d 351, 352 (1st Dep't 1975). The undisputed record shows that Laggner's sale of 40,000 shares to Yuan was completed: Laggner entered into a written agreement with Yuan for the sale of the shares; Yuan paid the full purchase price of $280,000; Yuan received a digital share certificate from the company certifying her ownership of the shares; the sale was reflected in Uphold's official corporate records, with Laggner's shares reduced by 40,000 and Yuan listed as the owner of 40,000 shares; and Laggner retained the $280,000 payment and never returned or attempted to return the funds to Yuan.

Although Laggner acknowledges that New York law governs the settlement agreement, he separately argues that Cayman Islands law is relevant to whether a sale was consummated. First, Laggner maintains that the sale to

6

Yuan was not consummated because he failed to deliver a share transfer document as required under Cayman Islands law. Even assuming that Cayman Islands law requires such an instrument of transfer, under New York law "a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." *A.H.A. Gen. Constr., Inc. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 31 (1998) (quotation marks omitted). Laggner is thus prevented from benefitting from his own failure to fulfill contractual obligations while retaining the full proceeds of the sale.

Laggner also argues that his pending winding-up petition in the Grand Court of the Cayman Islands renders the share transfer unconsummated because the sale would be voided if he prevails. Laggner's petition is still pending, and in the meantime he has received and retained the sale proceeds. The District Court properly determined that the sale was consummated for the purposes of the settlement agreement, which triggered Laggner's obligation to pay Thieriot half of the sale proceeds.

### III. Indispensable Parties

Laggner also argues that the District Court erred in not requiring the joinder of Yuan and the other parties to the settlement agreement – Minor, David

Bechtel, and Outpost Capital Management – as indispensable parties under Federal Rule of Civil Procedure 19. We disagree.

This Court has rejected "a bright-line rule that all parties to a contract are indispensable." *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009). Rule 19 requires joinder only when the court cannot accord complete relief among the existing parties or when the disposition of the action would impair the ability of absent parties to protect their interests. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006); Fed. R. Civ. P. 19(a)(1). Here, complete relief can be accorded between Thieriot and Laggner without joining the other parties. The dispute concerns only Thieriot's right to receive half the proceeds of Laggner's sale of shares. None of the absent parties claim any entitlement to these funds, nor has Laggner shown how their interests would be impaired by this litigation. The District Court correctly determined that this dispute could be resolved without the joinder of additional parties.

## IV. Attorney's Fees

In its August 19, 2024 judgment, the District Court ruled that under the terms of the settlement agreement, Thieriot, as the prevailing party, is entitled to an award of reasonable attorney's fees incurred in this litigation. The District

8

Court ordered that the parties' respective positions as to fees and costs be submitted by September 18 and October 2, 2024. Also in September, Laggner timely appealed the August 19, 2024 judgment. Although his brief on this appeal challenges the District Court's August 19, 2024 ruling that Thieriot is entitled to fees, issues as to attorney's fees amounts were not fully adjudicated in the District Court until March 25, 2025. To the extent Laggner challenges the August 2024 determination of Thieriot's entitlement to attorney's fees, we affirm substantially for the reasons stated by the District Court in its August 19, 2024 opinion.

Laggner has also appealed the judgment entered in March 2025 that determined, among other issues, the amount of fees awarded to Thieriot. That appeal, No. 25-865, is pending before another panel of this Court. We express no view as to the issues adjudicated subsequent to the August 19, 2024 judgment before us.

**CONCLUSION**

We have considered Laggner's remaining arguments and conclude that they are without merit.   For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court